STATE *ex rel.* KNOX. *Atty. Gen., v.* WYOMING MFG. CO.*

(Division B. Jan. 26, 1925. Suggestion of Error Overruled March 9, 1925.)

[103 So. 11.   No. 24578.]

1. COURTS. *Former decision construing statute not disturbed unless manifestly wrong and mischievous.*

Where this court has decided a question involving the construction of a statute, such decision will not be disturbed unless it is manifestly wrong and mischievous.

2. TAXATION. *Appeal can only be taken from order finally approving assessment after its approval by State Tax Commission.*
Under chapter 323, Laws of 1920, and chapter 120, Laws of 1918, the appeal provided for can only be taken from the order finally approving the assessment after its approval by the State Tax Commission. *Moller-Vandenboom Lumber Co.* v. *Attala County* (Miss.), 99 So. 823; *Wilkinson County* v. *Foster Creek Lumber & Mfg. Co.* (Miss.), 100 So. 2, cited.

3. STATUTES. *Statute covering entire scheme dealt with in former statutes repeals them; subsequent statute intended to prescribe only rule in case provided for repeals former statute, though not repugnant thereto.*
Where the legislature in a later act covers the entire scheme dealt with in former act, the former act will be repealed by the later act, although there is some difference in the provisions of the two statutes. A subsequent statute not repugnant in its provisions to the former one, but clearly intended to prescribe the only rule in the case provided for, repeals the former statute. *M. & O. R. Co.* v. *Weiner*, 49 Miss. 739; *Myers* v. *Marshall County*, 55 Miss. 347, cited.

4. TAXATION. *Statute governing giving of notice that equalized assessment rolls are open for inspection, stated.*
The notice provided by section 5, chapter 323, Laws of 1920, supersedes section 4303, Code of 1906, section 6937, Hemingway's Code, as both notices are provided for exactly the same purpose, and chapter 323, Laws of 1920, being the later act.

5. TAXATION. *Error in notice to taxpayers as to equalization of assessment rolls as to date order entered held not to make notice void, in view of reference to record.*
Under section 5, chapter 323, Laws of 1920, the fact that the clerk of the board of supervisors, in the notice published, erroneously states the day the order was entered, but refers in the notice to the book and page in the minutes of the board where the order will be found, such error does not make the notice so given void.

6. TAXATION. *Board of supervisors required to give notice of equalization as early as practicable; "immediately."*
The word "immediately," used in section 5, chapter 323, Laws of 1920, is not to be given a restricted and mandatory meaning. It does not mean instantaneously, but is to have a practical interpretation and means as early as practicable. If the taxpayer

has sufficient time after notice is given to make the examination and prepare objections before the next meeting of the board, it will be sufficient; the statute not naming the particular day for it to be given or any particular number of days before the meeting for it to be given.

---

*Headnotes 1. Courts, 15 C. J., section 340; 2. Taxation, 37 Cyc., p. 116 (1926 Anno.); 3. Statutes, 36 Cyc., p. 1078; 4. Taxation 37 Cyc., p. 1072; 5. Taxation, 37 Cyc., p. 1072 (1926 Anno); 6. Taxation, 37 Cyc., p. 1072 (1926 Anno).

APPEAL from circuit court of Lamar county.

HON. J. Q. LANGSTON, Judge.

Action by the state, on the relation of Rush H. Knox, attorney-general, against the Wyoming Manufacturing Company. From an order of the board of supervisors of Lamar county approving land assessments of the Wyoming Manufacturing Company, the attorney-general appealed to the circuit court, and from its order dismissing the appeal, he appeals. Reversed and remanded.

*Hathorn & Williams,* for appellant.

One ground of the motion is that the record shows on its face that the appeal is prosecuted without authority of law. The appeal itself states that it is prosecuted under chapter 120, Laws of 1918; and, this court held specifically in *Lumber Co.* v. *Roberson,* 89 So. 160, that the attorney-general is authorized to take such appeal under this statute. In *Lumber Co.* v. *Roberson,* this court held that chapter 120, Laws of 1918, granting the right of appeal to the attorney-general, is not in violation of the Constitution.

Another ground of the motion is that the appeal cannot be prosecuted because it was not filed within the time required by law. The statute, chapter 120, Laws of 1918, under which the appeal is prosecuted provides three stages for making the appeal by the attorney-general. (1) Within twenty days after the adjournment of the

meeting of the board at which the decision is made from which the appeal is desired; (2) or within twenty days after the adjournment of the meeting at which the assessment rolls are corrected in accordance with the instructions of the state Tax Commission; (3) or within twenty days after the adjournment of the meeting of the board of supervisors at which the approval of the roll by the state Tax Commission is entered. It will be observed by reference to the record that two appeals, in identically the same language and form, were prosecuted by the attorney-general from the assessment of the appellee.

The first appeal was taken on October 19, 1923, which was within twenty days after the adjournment of the meeting of the board at which the assessment rolls were corrected in accordance with the instructions of the state Tax Commission, said rolls having been corrected at the October, 1923, meeting, and the board having adjourned on the 3rd day of October, 1923. Afterwards, and on November 24, 1923, the second appeal, identical in form and substance with the first was taken. This appeal was taken within twenty days after the adjournment of the meeting of the board of supervisors at which the approval of the land rolls by the state Tax Commission was entered, said order of approval having been entered on November 6, 1923, and the board having adjourned on November 7, 1923. It, therefore, appears affirmatively from the record in this case that the appeal was prosecuted within the time allowed by law, which disposes of the fifth and the last ground of the motion to dismiss.

The entire argument of counsel for appellee is predicated upon the propositions that section 4304, Code of 1906, section 6937, Hemingway's Code, is still in force and effect, and must be complied with in order to make the assessment roll valid. They freely admit that if this statute has been repealed by chapter 323, Laws of 1920, either expressly or by implication, their contention is unsound and the roll is valid. Then they proceed to

the argument that the statute is not expressly repealed by chapter 323, Laws of 1920, and argue further at great length that it is not repealed by implication. They cite many authorities to the effect that repeals by implication are looked upon with disfavor by the courts.

We shall not be drawn into a discussion of the general propositions of law presented in their brief; but, we earnestly insist that those authorities and their argument do not apply to the case at bar.

By reference to section 4303, Code of 1906, it will be observed that "when the assessor returns and files the assessment rolls in the office of the clerk of the board of supervisors, he shall give notice thereof, and the date of the meeting of the board to consider the same by publication in some newspaper in the county, or if there be none, then by posting at the court house for the space of three weeks." In other words, under the requirements of this section, the assessor must file his roll, and is required to file his roll on the day fixed by law, and when this is done he is required to give notice of the filing as well as of the date of the meeting of the board to consider the same for the space of three weeks.

By section 3, chapter 323, Laws of 1920, the assessor is given until the First Monday of July to complete and deliver his roll to the clerk of the board of supervisors. In fact, the record in the case at bar shows that the assessor did file his roll with the clerk of the board of supervisors on Monday, July 2, 1923. By section 5, chapter 323, Laws of 1920, the board of supervisors is required immediately at the July meeting to proceed to equalize the rolls; and is required to complete such equalization at least ten days before the August meeting and is further required to give notice by newspaper publication to the public that such rolls as so equalized are ready and open for inspection and examination.

So that, we have section 4303, Code of 1906, if still in force, which requires the assessor, after filing his roll

on the First Monday of July, as required by section 3, chapter 323, to give three weeks' notice by publication or posting at the court house to the public of the fact that he has filed the roll and of the date of the meeting of the board to consider the same. Whereas, by section 5, chapter 323, Laws of 1920, the board is required immediately, after convening on the First Monday of July (the same day on which the roll is filed), to proceed to equalize the rolls, and is required to complete such equalization at least ten days before the August meeting.

It is, therefore, seen that it would be a physical im possibility for the assessor to give the three weeks' notice of the time of the meeting of the board to consider the roll, as required by section 4303, Code of 1906, between the time fixed by law for the filing of his roll, which is the First Monday in July, and the time fixed by law for the board to consider the same, which is, also, the First Monday in July. We submit, therefore, that there is a clear-cut conflict between section 3 and section 5 of chapter 323, Laws of 1920, and section 4303, Code of 1906, in this respect; and since it clearly appears that section 4303, Code of 1906, is in conflict with section 3 and 5, chapter 323, Laws of 1920, it necessarily follows that section 4303 is expressly repealed by the provisions of section 17, chapter 323, Laws of 1920.

On the oral argument of this case the point was made by counsel for appellee that the review of the assessment rolls by the state Tax Commission and the entry of its order approving the same as being equal and uniform with values of like property in other counties throughout the state constitutes an adjudication that the property of each taxpayer on the roll, including appellee, has been finally determined to be equal and uniform with that of all other taxpayers; and that, therefore, to permit an appeal to be taken from an individual assessment, as in the case at bar, would be to deny to appellee its constitutional guaranty of equal and uniform taxation. By per-

mission of the court, we were permitted to make a short reply to this argument and especially to comment thereon in the light of *Darnell* v. *Johnson,* 109 Miss. 570, 68 So. 780.

By reference to the copy of the assessment appealed from, which is filed in the record, it will be noted that an appeal was taken from the assessment of about eight thousand four hundred acres of timbered land whereon appellees had been assessed with an estimated number of about forty-four million feet of merchantable timber. This shows an average of about five thousand feet of timber per acre. So that, the question of the number of feet per acre on the land enters vitally into the question of whether or not the assessment of this taxpayer is equal and uniform with the assessments of other taxpayers, since the record shows that the stumpage valuation per thousand feet of the timber is uniform.

In the *Darnell case, supra,* this court held that the assessment of any amount of timber on wild land becomes *res adjudicata* of the amount and value of the timber thereon unless appealed from, irrespective of the question of whether the estimate and the stumpage value is correct or approximately so. In other words, the effect of this decision is to hold that even though the land might have ten thousand feet per acre worth five dollars per thousand, and is assessed with only one thousand feet per acre at five dollars per thousand, yet unless appealed from, the assessment is final. In such an assessment, it is readily seen that the public would suffer by a difference of forty-five dollars per acre on the land because of an under valuation. So that, where timber had been underestimated or where properly estimated and undervalued, it becomes very important to the public to have this question inquired into and to that end for the attorney-general to make an appeal for the purpose of such inquiry.

Again, in the very nature of things, the examination and passing upon the rolls by the state Tax Commission

could not, with more than eighty counties to consider within the brief space of a few weeks, be more than an equalization as between counties as to the valuation placed on the different classes of property listed. With reference to timber, simply an adjudication that the value by one thousand feet, under the estimates as listed, is equal and uniform, but the question of the amount of timber per acre on the land is a question, which, in the very nature of things, could not be inquired into nor determined by the state Tax Commission in the short time it has to consider the rolls.

*Lamar Hennington, S. E. Travis, Green, Green & Potter* and *W. P. Cooke,* for appellee.

I. SECTION 6937, HEMINGWAY'S CODE, STILL IN EFFECT. This section has been twice before the court. *Cameron v. Whittington,* 120 Miss. 595, 82 So. 311; *Smythe v. Whitehead,* 97 So. 530. But it is contended that this section has been repealed by sections 7769y to 7769vI. Thereto there are many answers.

Section 6937 is printed as a part of Hemingway's Code, and, as a part of the same Code, in the supplement are printed the several sections alleged to repeal it. But, by the legislature in 1918, Concurrent Resolution 2, p. 463, it is recited that the matter of adopting Hemingway's Code be referred to the Judiciary Committee of the Senate and House, and thereafter, in 1922, was adopted this law: "That the compilation of statutes, known as Hemingway's Code of 1917, and the supplement thereto of 1921, be adopted as the official compilation of the statutes of the state of Mississippi; and that it shall be received as the statute law of this state in all courts and places where the same may come in question." Therefore, on April 8, 1922, we have this declaration putting in force these two several acts, each absolutely enforcible, and each treated by the legislature as law, the declaration being that "it shall be received as the statute law

of this state . . . where the same may come in question.'' Coming here in question, we, therefore, produce section 6937, and in favor of its validity have this declaration of 1922.

In adopting a Code, compliance with section 61 of the Constitution was not essential. *Hunt* v. *Wright,* 70 Miss. 298. But it is said that the law which may have been repealed and which may have been included in said Code and supplement . . . shall not be revived by this Act. But we find no law expressly repealing section 6937, and therefore section 4 of this Act must needs not be applicable, but, with deference, section 4 cannot be extended to include implied repeals because a single Code at a single date, the entire compilation is declared to ''be received as the statute law of this state,'' and hence, when such is the case, it is the duty of this court to give effect to all provisions therein contained, and section 6937 can be made effective as at now.

Surely there was no repeal by implication. *Robinson* v. *Robertson,* 89 So. 161, held that where statutes are simultaneously enacted, and not repugnant, the legislature intended that both should work in harmony with each other. By the Constitution of Mississippi the assessor is vested with duties not impairable by legislative action, *Hawkins* v. *Mangum,* 78 Miss. 97. This constitutional officer, therefore, must be regulated, but, under such regulation, his functions must remain substantially the same.

Section 6937 makes it the duty of the tax assessor to publish notice, whereof this court has declared that the notice so to be published must needs be strictly complied with and confers upon the taxpayer a valuable right. Now, the law alleged to repeal is sections 7769y to 7769rI. Dealing with each section of this Act in sequence, under section 6893, Code of 1906, 4360, the Auditor of Public Accounts was required to furnish the assessment rolls, and by section 7769 this power was, in

1920, specifically vested in the State Tax Commission, and by reason thereof, under section 7769rI, section 4260 or 6893 was specifically repealed.

Next, as section 4261 and 4263 sought to do that which was inconsistent with section 7769y, they were also expressly repealed, but note section 6869: ''One of the personal assessment rolls and also one of the real assessment rolls must be required to be delivered to the assessor and thereof no attempted repeal was made although 4261 on one side and 4263 on the other was specifically written out of the law for the future.'' So that we therefore find that, as to the assessor, it was the legislative intent that he should have one of the personal assessment rolls and also one of the real assessment rolls, and his rights thereunto were vouchsafed, not by the law as amended in 1920, but as originally written, leaving therefore in effect section 4262, making it the duty thereunder of the Tax Commission to see that the assessor so received this roll thus referred to.

Now, from section 6898 to section 6913, Hemingway's Code, section 4264 to section 4297, Code of 1906, no change whatever was made and it expressly left in effect section 6912, Hemingway's Code. This being the analysis of the applicable statutes, what has this court said thereof? See *Baxter* v. *Moyse,* 101 Miss. 36, 57 So. 299. Therein will be found a review of all preceding cases, among others, *Commercial Bank* v. *Chambers,* 8 S. & M. 9, wherein it was declared that two acts seemingly repugnant and inconsistent, if possible, must be construed so that both may stand and be harmonized.

In the instant case, there is naught attempted that would hinder the assessor from complying with section 6937. Not only this, but the entire theory that the law renders requisite compliance therewith. In the Ascher case reference was made to *Woods* v. *United States,* 16 Pet. 342, 10 L. Ed. 987. The great case of *G. N. R. R. Co.* v. *United States,* 208 U. S. 452, 52 L. Ed. 567, is specifically followed in the Ascher case; *Rhodes* v. *Mc-*

*Wilson* (Ala), 77 So. 469; *Ex parte McInness,* 98 Miss. 792, 54 So. 260; *Bank* v. *State,* 6 S. & M. 633; *Bank* v. *State,* 7 S. & M. 177; *Com. Bank of Natchez* v. *Chambers,* 8 S. & M. 60; *White* v. *Johnson,.* 23 Miss. 68; *House* v. *State,* 41 Miss. 737; *Smith* v. *Vicksburg,* 54 Miss. 615; *Pons* v. *State,* 49 Miss. 7; *Richards* v. *Patterson,* 30 Miss. 585; *Owens* v. *Railroad Co.,* 74 Miss. 826; *McAfee* v. *Southern R. R. Co.,* 36 Miss. 675; *Kimball* v. *Alcorn,* 45 Miss. 156; *Peyton* v. *Cabiness,* 44 Miss. 819; *Hearn* v. *Brogan,* 64 Miss. 339; *Shelton* v. *Baldwin,* 26 Miss. 445; *Deaton* v. *Burchart,* 59 Miss. 147; *Swann* v. *Buck,* 40 Miss. 307.

These decisions, therefore, demonstrate that where, as here, the later law leaves in effect sections of the earlier law requisite to a workable formula, although sections of the earlier law which are not expressly repealed still remain as a part of the law and must be given effect accordingly. There is nothing which in any way prohibits section 6937 from being so enforced.

II. Chapter 120, Laws of 1918, Repealed by Section 7768y et seq. Note that chapter 135, Laws of 1918, was amended by chapter 323, Laws of 1920, and while we recognize that in *Robinson* v. *Robertson, supra,* it is declared that *chapter* 120, Laws of 1918, was not repealed, with deference, if the attorney-general succeeds in demonstrating to this court that section 6937 has been repealed, then, under precisely the same reasoning and for precisely the same causes, section 7769y et seq. does repeal chapter 120, Laws of 1918. Now, for the first time, this court is squarely face to face with the right as to whether or not section 7769hI, section 7769jI, and section 7769rI repeal section 61 as to an appeal to the circuit court by the attorney-general. The taxpayer was allowed to appeal within the limitation theretofore fixed for the attorney-general and by this draftsman copied substantially from the portion of the statute admeasuring time in appeals by the attorney-general. As the time when

and persons who might appeal were brought into section 7769hI, also section 7769jI as well as the repealing clause and thereafter, with deference, the attorney-general could not appeal.

Section 7769y et seq., eliminated, with deference, the necessity for an appeal by the state because it ironed out and co-ordinated the inequalities between county and county and fixed throughout the state a general basis of taxation as pointed out in *State* v. *Wheatley,* 113 Miss. 555, 74 So. 429. This case has been approved in *Robertson* v. *Bank,* 76 So. 690; *Supervisors* v. *Citizens National Bank,* 80 So. 530; *Taylor* v. *State,* 83 So. 814. Under the Fourteenth Amendment to the Federal Constitution, parties are required to be afforded by the state equal protection of the law. *Adams* v. *Railroad Co.,* 77 Miss. 276.

To the same extent every over-assessment or under-assessment of property is correlated generally throughout the state, all have this same effect, and thereby the great step taken in advance when the state Tax Commission was created will be killed if it is possible to appeal as to a certain individual, and throw that class of property out of harmony by a reversion to a system of an individual county acting wherein there would be no co-ordination of county with county, no correlation between the value in Pearl River county and Lamar county through a common instrumentality, and thereby the precise purpose which was evidenced by this fundamental advance in our taxing scheme, declared a great evil in the Wheatley case, would be overthrown, and we would revert, by appellant's contention, to a condition in which that which was sought to be rectified would again become rampant as an evil. See *Sioux Bridge Co.* v. *Dakota,* Adv. Sheets, Sup. Ct. U. S. p. 222; *Baker* v. *Draesfrow,* Adv. Sheets, 1923-4, p. 54; *Gammill Lbr. Co.* v. *Board of Supervisors,* 274 Fed. 630. In this case, an attack is sought to be made upon several separate appeals, dealing with individual cases, where both the Tax Commis-

sion and the supervisors acted in their respective spheres and found that the assessments appealed from correlated correctly the obligations imposed for the support of the Government.

The effect of this appeal as to these individuals will, therefore, be to destroy this correlation, this co-ordination, and to subject them to a liability which is greater than that borne by those other property owners, and thereby the whole scheme would be set aside and appellee deprived of property without due process and denied equal protection of the law.

The proper rule in this class of cases is set forth in *Swann* v. *Buck,* 40 Miss. 307, where it was declared by Mr. Justice ELLETT: "That act expressly authorizes the auditor to issue warrants for all claims accruing after the 16th of October, 1865. But, in the view we are now taking, there was already a law in force providing for the issuance of warrants for all claims, whether ac-cruing before or after that date, and, therefore no ne-cessity existed for such an act, if only intended to sanc-tion the issuance of such warrants.

"Something else, therefore, was intended, and the evident purpose of the legislature was to prohibit the issuance of warrants in any case not embraced within it. The intent being ascertained, it must be carried into effect, if warranted by the words of the act. It is true there are no negative words, nor any express repealing clause, and that repeals by implication are not favored by the courts, yet it is a well-settled rule of interpreta-tion, that, although the subsequent statute in all of its provisions be not rejugnant to a prior one, yet if the latter statute was clearly intended to prescribe the only rule that should govern in the case provided for, it re-peals the original act. Sedgwick on Stat. & Const. Law, 124; *Davies* v. *Fairbairn,* 3 How. (U. S.) 636; *Dexter-Limerick Plank Road Co.* v. *Allen,* 16 Barbour, 15." See, also, *Myers* v. *Marshall County,* 55 Miss. 347; *Vicksburg* v. *Ins. Co.,* 72 Miss. 70; *Clay Co.* v. *Chickasaw*

*Co.,* 64 Miss. 542; *Ellis* v. *Paige* (Mass.), 1 Pick. 45; *Bartlett* v. *King,* 12 Mass. 537; *Nichols* v. *Squire,* 5 Pick. 168; Lewis' Sutherland on Stat. Const. 515; 26 Ency. 725; *Bank* v. *State,* 6 S. & M. 633; *White* v. *Johnson, supra; Shelton* v. *Baldwin, supra; Richards* v. *Patterson, supra.*

III. Certiorari to Tax Commission Exclusive Remedy. The Code, section 7767, provides a hearing before the Tax Commission and declares that the decision of the ''board of state Tax Commissioners then made shall be final, and upon the rendering of their decision, it shall be the duty of the board of supervisors to immediately revise and correct the county valuation in the manner hereinbefore in this section contemplated and provided. The revised and corrected property valuations thus made shall be the fixed and legal valuation of the property for the payment of taxes, and it shall be the duty of the taxpayer to pay his taxes thereon accordingly.''

Now, if there is a failure by the State Tax Commission to do that which it ought to do in co-ordination and correlation, the remedy, if there be one, is from the State Tax Commission to the circuit court of Hinds county under a writ of *certiorari,* where the whole question in every county as to every piece of property is before a court with plenary power in the premises. *Power* v. *Robertson,* 93 So. 769; *Western Union Tel. Co.* v. *Kennedy,* 110 Miss. 73, 69 So. 674; *Railroad Co.* v. *Adams,* 85 Miss. 772, 38 So. 348.

IV. The Appeal Here too Late. Under the law, being assessed with this property it becomes a personal obligation collectible in due course. Now, being a judgment final, five days are allowed for an appeal. No appeal may be taken from a judgment at law not final. *Y. & M. V. R. R. Co.* v. *Wallace,* 90 Miss. 609.

Under our case stated, assume the final certificate came down from the supervisors November 5th and was spread on the minutes that day—the contention of the

state is that it had a right to appeal from that judicially determined by the supervisors at the August meeting from August 1st to August 21st. Thereafter it had no right of appeal until October 5th, when right was revived and continued until October 25th, when it again ceased; again became final; was again revived November 5th to continue until November 26th. This interpretation of the statute is in flagrant violation of the sanctity of judgments which, when the time for appeal has expired, must be vouchsafed full faith and credit everywhere, especially at home.

We recognize that *Robinson v. Robertson, supra,* in a measure is contrary here, but, with deference, section 97 of the Constitution was not called to the attention of the court or passed upon by the court directly or indirectly. *Lawson v. Jeffries,* 47 Miss. 686.

V. Chapter 120, Laws of 1918, Unconstitutional. By section 61 of the Constitution of Mississippi it is provided: "No law shall be revived or amended by reference to its title only, but the section or sections as amended or revived, shall be inserted at length." Therewith chapter 120, Laws of 1918, in no way, conforms. Its caption is: "Be it enacted by the legislature of the state of Mississippi. (81) (80). Appeals from assessment of taxes, etc." There is not the slightest attempt to follow section 61 of the Constitution, and, for that reason there is no right to appeal to this court in the attorney-general.

Argued orally by *F. C. Hathorn,* for appellant, and *S. E. Travis* and *Garner W. Green,* for appellee.

Ethridge, J., delivered the opinion of the court.

This is an appeal from an order of the circuit court dismissing an appeal taken by the attorney-general from an order of the board of supervisors to the circuit court from the assessment for the year 1923. The petition for appeal recites that it is taken under authority of chap-

ter 120, Laws of 1918, and informs the honorable board that the state and county is aggrieved at the action and decision of the said board in the matter of the approval of land assessments of the Wyoming Manufacturing Company as appears on the land assessment rolls of said county for the years 1923 and 1924 as shown in the exhibit to the petition, for the reason that the said assessment is an undervaluation for the purposes of revision so as to give said property a fair and equal assessment thereof, and hereby appeals from the said decision to the circuit court of said county; such issue to be tried anew in the circuit court of said county, etc.

The part of the exhibit referred to is as follows:

"This exhibit shows the page and the line where assessed and the amount of assessment of lands of Wyoming Manufacturing Company on the land assessment roll for 1923 and 1924, from which this appeal is taken, viz.:

| Page | Line | Amount |
|------|------|--------|
| 118 | 19 & 20 | $22,680.00 |
| 118 | 24 | 13,880.00 |
| 118 | 32 | 18,600.00 |
| 119 | 4, 5, 6, 7 | 22,770.00 |
| 119 | 16, 17 | 28,480.00 |
| 119 | 29 | 5,560.00 |
| 124 | 29 | 960.00 |
| 125 | 9 | 33,600.00 |
| 125 | 11, 12 | 19,615.00 |
| 125 | 24, 25, 26, 27 | 21,645.00 |
| 126 | 5 | 880.00 |
| 126 | 7 | 14,620.00 |
| 126 | 18 | 26,120.00 |
| 126 | 24 | 9,640.00 |
| 127 | 12 | 5,480.00 |
| 127 | 20 | 26,080.00 |
| 127 | 22 | 24,360.00 |
| 127 | 25 | 19,160.00 |
| 128 | 2, 3 | 20,740.00 |
| 128 | 8 | 4,000.00 |
| 128 | 10, 11 | 35,380.00 |
| 128 | 15 | 27,960.00 |
| 128 | 23 | 11,680.00 |

$413,890.00

"Filed November 24, 1923, R. L. McNair, Chançery Clerk.

"Filed November 24, 1923, J. T. Tannihill, Circuit Clerk.''

There were two petitions for appeal, the last one filed November 24, 1923, and the first one filed October 19, 1923.

At the October meeting, 1923, of the board of supervisors, there was entered on the minutes of the board an order of the Tax Commission requiring copies of the assessment rolls to be made up in accordance with orders of the Tax Commission. The order was entered by the Tax Commission on September 29, 1923, and a final order of the Tax Commission was entered on the minutes of the board of supervisors on November 6, 1923, finally approving the roll by the Tax Commission and by the board of supervisors. At the December meeting, 1923, of the board of supervisors, the board entered an order reciting that it was informed that the attorney-general had prosecuted an appeal and proceeded to declare that the value placed on the assessment by the board was fair and equal, etc., and repudiated the action of the attorney-general in taking the appeal. The board also requested the circuit court to dismiss the appeal.

A motion was filed in the circuit court to dismiss the appeal on the following grounds:

First. The record shows on its face that the plaintiff has no cause for complaint.

Second. The record shows on its face that the appeal is prosecuted without authority of law.

Third. The statute under which the appeal is prose cuted is unconstitutional.

Fourth. It appears from the face of the proceedings that the alleged assessment is a nullity because the tax assessor did not publish notice of the filing of the rolls as required by law.

Fifth. The appeal cannot be prosecuted because it was not filed within the time required by law.

The assessment roll was filed on the 2d day of July, 1923, and the assessor did not publish any notice to the

taxpayers. The board of supervisors adjourned on the 3d day of July, 1923, to the 16th day of July, 1923, at which later day they entered an order reciting that the rolls had been corrected so as to equalize the property of the county in accordance with law, and directed a notice to be published to the taxpayers of the county in a paper published in the county, setting out the notice to be published in full, and the order was entered upon the minutes on said day, and then entered an order adjourning for the term.

The clerk of the board of supervisors inserted a notice in the newspaper designated on the 26th day of July, 1923, in the following words:

"To the Taxpayers of Lamar county, state of Mississippi:

"You will please take notice that the assessment of land and personalty on the rolls for 1923 have been changed and corrected by this board so as to comply with the laws of this state, and that said revised rolls are now open for examination, and that any objections to any assessment contained in said revised rolls must be made in writing and filed with the clerk of this board on or before the first Monday of August, 1923, at his office in the town of Purvis, said county, and that any or all assessments to which no objection is then and there made will be made final. The board of supervisors of said county, by R. L. McNair, clerk of said board: I, R. L. McNair, clerk of the board of supervisors of Lamar county, state of Mississippi, do hereby certify that the foregoing is a true and correct transcript of an order of said board of supervisors, passed on the 20th day of July, 1923, as the same appears on page 155 of Minute Book 5 of said board, now on file in the office of said clerk in the town of Purvis in said county. Witness my hand and official seal, this the 24th day of July, 1923. R. L. McNair, Clerk of the Board of Supervisors of Lamar County, Mississippi."

The first three grounds of the motion to dismiss challenges the right of the attorney-general to take the appeal and the constitutionality of the law, chapter 120, Laws of 1918, insisting, first, that chapter 120, Laws of

1918, was repealed by chapter 323, Laws of 1920, and, if not repealed, that the attorney-general could not appeal under the Laws of 1918, because so to do would be to deprive a taxpayer of his property without due process of law and to deprive him of the equal protection of the laws, because the entire assessment of the county was not appealed from, and as the board of supervisors and tax commissioners had adjudicated that the property of the defendant taxpayer was assessed equally and fairly with the other property in the county in proportion to its value, and that to raise the present assessment of this defendant without equalizing the whole roll would be unfair and an unequal assessment. It is also insisted that the state could not appeal from a judgment assessing this property, because the judgment was favorable to the state and was made by lawful agencies of the state, and that an appeal could not be prosecuted from a favorable judgment.

All of these questions were raised and decided in *Robinson Land & Lumber Co.* v. *Roberson, Attorney General,* 126 Miss. 535, 89 So. 160, and it is unnecessary to restate and reconsider these questions here, as we see no reason to overrule that case.

As to the fifth ground of the motion to dismiss, we think the appeal was in time and that the appeal could not be taken until the order of the Tax Commission approving the roll as finally assessed was entered under the authority of *Moller-Vandenboom Lumber Co.* v. *Attala County* (Miss.), 99 So. 823, and *Wilkinson County* v. *Foster Creek Lumber & Mfg. Co.* (Miss.) 100 So. 2.

The attorney-general prosecuted an appeal by the two petitions so as to be sure that an appeal was prosecuted at the right time from the proper judgment. However, the above authorities settled the date at which the appeal could be rightfully taken, and the appeal was prosecuted within the time provided by law.

This brings us to the fourth ground as to whether a notice was required under section 4303, Code of 1906, section 6937, Hemingway's Code, or whether chapter 323,

Laws of 1920, supersedes the Code section referred to and thereby repeals it.

The title of chapter 323, Laws of 1920, among other things, defines the purpose of the chapter as follows:

"An act to amend chapter 135 of the laws of 1918, entitled an act to empower the state Tax Commission to furnish the real and personal assessment roll, prescribe the form thereof and to define their duties and relations to its approval and correction; and to define the duties of the tax assessors and boards of supervisors in making filing, approving and correcting such rolls and hearing complaints of property owners," etc.

Section 2 of chapter 323 provides:

"The assessors shall annually assess the rolls and all property subject to taxation in their respective counties. They shall set down in the assessment rolls the names in full of all persons liable to taxation in the county, in alphabetical order; and when there are on the roll more than one person of the same name, the place of residence of each shall be shown, or they shall be otherwise so designated as to identify each and distinguish them. The assessor shall so fill all blanks on such rolls as to disclose clearly and fully each item of information indicated on said roll."

Section 3 of chapter 323 provides:

"*Roll—When to be Completed.*—The assessor shall complete the assessment and deliver the roll to the clerk of the board of supervisors on or before the first Monday of July in each year. He shall make an affidavit and append it to each roll, showing that he has faithfully endeavored to ascertain and assess all the persons and property in his county, and that he has not omitted any person or thing, or placed upon or accepted an undervaluation of any property, through fear, favor, or partiality."

Section 5 of chapter 323 provides that the board of supervisors shall immediately at the July meeting proceed to equalize such rolls and shall complete such equal-

ization at least ten days before the August meeting, and shall immediately by newspaper publication notify the public that such rolls so equalized are ready and open for inspection and examination. Section 6 of the act provides that the board shall meet on the first Monday of August to hear objections to the assessment and to examine the same, and to hear and determine all exceptions thereto, and to sit from day to day until the same shall have been disposed of, and all proper corrections made; and shall equalize the assessment and may increase or diminish the valuation of any property so as to make property of the same value pay the same tax, and provides that where any individual assessment has been increased as much as five hundred dollars notice shall be sent by mail to the person whose assessment is increased by the clerk of the board of supervisors. Section 7 provides that all objections shall be filed at the August meeting in writing, which written objections shall be filed by the clerk and preserved with the roll, and all persons who fail to file objections shall be concluded by the assessment and precluded from questioning its validity after its final approval by the board of supervisors or by operation of law, except minors and persons *non compos mentis*. The act also provides that by the first of September of each year the board of supervisors shall transmit to the state Tax Commission two copies of the recapitulation of the assessment as equalized, and that the state Tax Commission shall examine the same within thirty days from the receipt of the recapitulation and shall transmit by mail to the boards of supervisors the instructions in accordance with law as to what percentage shall be added to or taken from the assessment of the various classes of property on the roll or rolls to establish an equality of assessments throughout the state, and directs the board of supervisors when they receive such directions to proceed in accordance therewith, and to first correct any errors in their former equalization, and then shall apply the per cent. of increase or decrease as ordered by the state Tax Commission.

Section 4303, Code of 1906, section 6937, Hemingway's Code, reads as follows:

"When the assessor returns and files the assessment rolls in the office of the clerk of the board of supervisors, he shall give notice thereof, and the date of the meeting of the board to consider the same, by publication in some newspaper published in the county, or if there be none, then by posting at the courthouse for the space of three weeks, and this shall be notice to all persons of the fact, and of the contents of the roll or rolls so filed; and all persons shall be held to have notice of the time within which to file objections to assessments and of the time when the board of supervisors will hear the same; and of its power to raise assessments thereat."

Section 17 of chapter 323 of the Laws of 1920 repeals certain sections of the revenue chapter and certain acts amendatory thereof, but fails to include section 4303 of the Code of 1906 in the sections specifically repealed.

It will be seen from a careful study of chapter 323, Laws of 1920, and the Code sections therein repealed, and section 4303, Code of 1906, section 6937, Hemingway's Code, that they all pertain to the same subject-matter.

The notice required to be given by the board of supervisors under chapter 323, Laws of 1920, includes all the purposes of the notice required by section 4303, Code of 1906. Under the old law the board of supervisors did not proceed with the equalization of the assessments until the August meeting, but under the present act, chapter 323, Laws of 1920, the board makes the preliminary equalization at the July meeting, at which meeting no action was heretofore taken, but the equalizations and corrections so made at the meeting in July are merely preliminary, and are in the nature of additions and corrections to the assessment roll made and filed by the collector. Such act of the board at the July meeting is not final or binding, and they may be changed at the August meeting in any particular made necessary by the facts

then developed so as to bring about an equalization of property.

In other words, the notice provided by section 5 of chapter 323, Laws of 1920, is for the precise purpose and contains all the purposes provided in section 4303, Code of 1906. The scheme is changed to this extent: That the board of supervisors makes a preliminary estimate and correction, either increased or decreased, so as to advise the taxpayer when he appears on the first Monday in August exactly what the board purposes to do with his assessment. It enables the taxpayer prior to that meeting to inspect his assessment and to be able and ready to present his objections and proof without being compelled to attend the whole meeting to see whether or not the board of supervisors intends or proposes to raise or change his assessments.

A statute existing may be repealed without being specifically and directly referred to, where the legislature enacts a new statute covering the field covered by the former act, although there is some difference in the provisions of the two statutes.

In the case of *Myers* v. *Marshall County,* 55 Miss. 347, the rule is stated in the following language:

"We regard this act as a revision of the whole legislation on the subject of the fees of the officers embraced in it, and as precluding the assertion of any right on their part not given, or distinctly recognized, by the act. *Mobile & Ohio R. R. Co.* v. *Weiner,* 49 Miss. 725.

"'A subsequent statute, not repugnant in its provisions to a former one, but clearly intended to prescribe the only rule in the case provided for, repeals the former statute.' *Swann* v. *Buck,* 40 Miss. 270."

In *M. & O. R. Co.* v. *Weiner,* 49 Miss. 739, this court held: "The general rule is, that when any statute is revised, or when one statute is framed from another, some parts being omitted, the parts omitted are to be considered as annulled. For it must be presumed that the legislature has declared its entire will, otherwise there must be imputed to them gross carelessness or ignorance. Sedgwick on Statutes, 429. . . .

"The eighth section of the Code [of 1871] was introduced, out of abundant caution to free the subject of all doubt or perplexity, so that it would be easy to determine what were the statute laws of a general nature in force. 'If the subjects are revised and consolidated,' then all the parts of former statutes, on the same subject, which are omitted, ceased to operate on the first day of October, 1871."

In *Vicksburg* v. *Sun Mutual Insurance Co.,* 72 Miss. 67, 16 So. 257, it is said: "It is said in *Railroad* v. *Weiner,* 49 Miss. 725, adopting the language of the supreme court of Massachusetts, 'that a subsequent statute, revising the whole subject-matter of a former one, and evidently intended as a substitute for it, although it contains no express words to that effect, must, on the principles of law, as well as in reason and common sense, operate to repeal the former.'"

In *Clay County* v. *Chickasaw County,* 64 Miss. 534, 1 So. 753, it is said: "Here, then, are two statutes on the same subject and for the same purpose, and the last, under which the new county was in fact created, omitting the provision contained in the first, that the new county should receive its proportion of the county and school funds from the old counties. The general rule is that when any statute is revised, or when one statute is framed from another, some parts being omitted, the parts omitted are to be considered as annulled. Where a statute is evidently intended to revise the whole subject treated in a former statute, and to be a substitute therefor, it repeals such former statute, and though there may be a plain *casus omissus,* the courts cannot supply it. Sedgwick on Con. of Stat. and Const. Law, 365, 366, and note; *M. & O. R. R. Co.* v. *Weiner,* 49 Miss. 725.

"Without provision being made to the contrary, the new county was not entitled to any part of the county or school funds or other public property which did not fall within its boundaries. They belonged to and continued to be the property of the old counties after the separation. The creation of new counties is a matter

within the power and discretion of the legislature, subject only to the restrictions imposed by the Constitution."

When we consider the rules herein announced and apply them to the statutes involved in this controversy, we are driven to the conclusion that the legislature was dealing with the whole subject of the filing, notice, correction, objections, and approval of the assessment roll. It is true the new act gives less time to the taxpayer to examine the rolls than the former acts. But as the board of supervisors has made the preliminary changes and corrections which it deemed necessary to make, the taxpayer has ample time before the August meeting to advise himself as to how his property will be affected.

It is also said that even if section 5, chapter 343, Laws of 1920, is the sole governing law, that the roll is still void because the clerk's notice published in the paper by direction of the board of supervisors recited the entrance of the order as being made on the 20th day of July, 1923, when the board in fact adjourned on the 16th day of July, 1923, and there was no meeting of the board at all on the 20th day of July. It is true the assessor's notice stated that the order was entered on the 20th day of July, 1923, but the notice also referred to the book and page of the minutes of the board of supervisors where the order would be found, and this book and page showed the correct date of the entry of the order to be the 16th of July, 1923, instead of the 20th day of July, so that if the taxpayer inspected the order to which he was referred by the clerk's notice, he would be fully advised in the premises.

It is also said that the notice published on the 26th day of July, 1923, is not sufficient because the section says that the board shall immediately by newspaper publication notify the public, and the proof shows that an issue of the newspaper, in which the notice was published on the 26th day of July, 1923, came out on the 19th day of July, 1923, and that that was the proper issue for the notice to be inserted. The act does not say how many days' notice shall be given the taxpayer. It does require

138 Miss.—18.

the board of supervisors to complete its work of equalization at least ten days before the August meeting of the board, and that it.shall immediately, by newspaper publication, notify the public that the rolls are equalized and ready and open for inspection.

We do not think that the word "immèdiately" is to be given a restricted and mandatory meaning. It is true that the law intends to give the taxpayer notice as early as practicable, but it does not fix any day when the notice shall be given, nor does it fix any specific number of days that the notice shall be given. If the taxpayer has sufficient notice to enable him to go to the county site and make the examination necessary after the notice has been published, we think that would be sufficient. The word "immediately" in each place in the section is a word of indefinite meaning as is disclosed by the context. It does not mean instantaneously, but is to have a practical interpretation, and means as early as practical.

We do not think the failure to publish the notice on July 19, 1923, makes the notice void. The notice was in fact.given more than ten days before the August meeting of the board of supervisors.

We have dealt thus at length with these sections for the purpose of clarifying the law so as to advise the taxing officers of the meaning and purpose of the statute. However, in our opinion, if the roll was void for the want of notice, which it is not here, it would' have been the duty of the court to have entertained the appeal and to so adjudge to the end that the proper assessment might be made in the manner provided by law. An appeal from tax matters is tried *de novo,* and all parties interested may be brought into court by proper process, and if a person is given notice and appears and contests the matter, this person will be bound by the judgment rendered, although the notice required may not have been properly given.

It follows that the judgment of the court below must be reversed, and the cause remanded for proper proceedings in accordance with law.

*Reversed and remanded.*