## MOBILE AND OHIO RAILROAD CO. v. SAMUEL WEINER.

COMMON CARRIERS—THEIR LIABILITY—RULE AT COMMON LAW.—The common law holds the common carrier, liable for damage to and loss of goods, committed to him for transportation, unless the damage or loss result from the act of God, which is limited to inevitable accident, or from the public enemy. His responsibility begins with the reception and terminates with the delivery of the property at the place of its destination. Subject to these limitations, his undertaking is absolute and unqualified, no palliation or excuse is admitted. He is an insurer of the faithful performance of his duty.

SAME—HOW LIABILITY RESTRICTED.—It is now the admitted doctrine in America (as it has been settled beyond a reasonable doubt in England) that'it is competent for a common carrier to limit his common law liability by express contract. Story on Bailments, sec. 549; Gilmore v. Carman, 1 S. & M., 303; Neil v. Sanders, 2 S. & M., 578; Whitesides v. Thurlkill, 12 S. & M., 600.

SAME—WHAT CONSTITUTES NOTICE.—The weight of authority in this country is in favor of the rule, that the common carrier can not by public notices, although brought to the notice of the shippers, restrict his liability. Moses v. B. & M. R. R. Co., 4 Foster R., 71. This must be done, if at all, by special contract, assented to by the shipper. The shipper must understand the import of the receipts or other papers embodying the contract. To give any validity to such matter, it must be deliberately assented to, with the knowledge and intent that it shall be binding as a special contract and control the respective rights of the parties.

SAME—LIABILITY AS INSURERS—CARE—PRUDENCE—NEGLIGENCE.—A common carrier is an insurer of the goods delivered to him for shipment, and whilst he may curtail his risk as insurer, he cannot limit his duty, to use diligence, care and good faith, in the custody and delivery of the goods. He can not stipulate for less risk than that he shall answer for accidents and casualities which care and prudence could not provide against. Care and prudence must be measured by the character of the employment and business. The want of these is negligence. It is a duty incident to the public employment in which railroads are engaged to carry cotton. They must load it in cars suitable to its protection from fire, and use all other usual precautions, if they fail to do this, and the cotton is burned, it is negligence.

STATUTES—REPEAL OF ACTS OF 1863.—The general rule is, that when any statute is revised, or when one statute is framed from another, some parts being omitted, the parts omitted are to be considered as annulled. For it must be presumed that the legislature has declared its entire will. Sedgwick on Statutes, page 429. The 8th section of the Code of 1871, provides that "If the subjects are revised and consolidated," then all the parts of former statutes on the same subject, which are omitted, cease to operate on the 1st day of October, 1871.

Error to the circuit court of Lee county.  Hon. B. B. BOONE, Judge.

The facts sufficiently appear in the opinion of the court.

The following is assigned for error:

1. Court erred in sustaining plaintiff's demurrer to defendant's pleas.

2. Court erred in overruling defendant's motion for a new trial.

*Harris & George, Houston & Reynolds, and Robins & Allen,* for plaintiff in error;

1. Can a common carrier limit its common law liability by special contract, and the evidence and consideration to establish and support such a contract? The liability of a common carrier may be distinguished into two classes.  One is a liability for losses by neglect on the part of the carrier, or his agents, which is *the liability of a bailee arising from omission of duty.* The other a liability for losses by accident, mistake, or other unavoidable occurrence, without any actual fault on the part of the carrier, *which is the liability of an insurer,* and founded upon a principle of the common law.  The liability arising from omission of duty, cannot be limited by contract, and this upon principles of public policy.  The liability as an insurer may be limited by contract, for such a limitation does not contravene any principle of public policy.  Public policy does not invalidate the contract of a carrier restricting his liability, but merely limits its operation to losses by accident, mistake, or other unavoidable occurrence, without any fault on the part of the carrier.  1 S. & M., 303 ; 2 S. & M., 578 ; 12 S. & M., 599 ; 39 Miss., 833 ; Angell on Carriers, § 220 ; 2 Parsons on Con-

tracts, 234, note 1; 6 How. U. S.. 344; 3 Wall., 111; 5 American R., 424; 1 American R., 131; 1 Kernan, N. Y., 493; 37 Ala., 250; 22 Ohio, 132; and authorities cited in 2 Parsons, 234; 13 Ad. & El., 347; 7 Exchequer, 704; 5 Eng. L. & E., 329; 25 Eng. L. & E., 347. As to the evidence to establish such a contract, it must be an express contract. A notice, either general or special, brought to the knowledge of the shipper, is not sufficient. His assent is not to be presumed. 2 Parsons on Contracts, 238, note N, and authorities therein cited. A bill of lading, or railroad receipt, containing exceptions to the common law liability of the carrier, and delivered to the shipper, or his agent, is evidence of an agreement between the carrier and shipper, exempting the former from his common law liability. Door v. N. J. S. N. Co., 1 Kernan, (11 N. Y.,) 491; Blossom v. Dodd, 43 N. Y., 264; Grace v. Adams, 100 Mass., 106; VanGoll v. S. E. R. Co., 104 Eng. C. L., 75; Steele v. Townsend, 37 Ala., 247; Stromn v. D. & M. R. R. C., 21 Wisconsin, 554; Boorman v. Am. Ex. Co., 21 Wisconsin, 153; 2 Duvall, Ky., 562; 7 Exchequer, 700, 701. The special contract may be established by parol, or from a long and uniform course of dealing between the parties. Perry v. Thompson, 98 Mass., 252; Am. Tr. Co. v. Moore, 5 Mich., 368.

2. How is this question of the right of a common carrier to limit his common law liability, affected by statute in Mississippi?

On the 9th of December, 1863, the legislature enacted: "That railroad companies, in this State, shall be liable, as common carriers, for the transportation of freight and baggage received by them, any obligation which may be entered into between said railroad companies and other parties to the contrary notwithstanding." Acts of 1863, p. 146. In Mobile & Ohio R. R. Co. v. Franks, 41 Miss., 495, it was decided that this act prohibited common carriers from limiting their common law liability. It was urged by counsel for defendant in error that this act is in force now, and was not abrogated by the Code of 1871.

But the act of December 9, 1863, is annulled by the Code of 1871, and the special contract set up as a defense to the action, was made and entered into on the 12th day of October A. D., 1871, after the Code of 1871 went into effect.

The question presented is not the repeal of a pre-existing act of the legislature by subsequent enactment, but the effect of a codification of the laws of a State upon all statutes of a general nature.

Section 8 of the Code of 1871 declares, that after the 1st of October, 1871, this Code shall supersede and repeal all pre-existing statutes of a general nature, the subjects of which are herein revised and consolidated.   Sec. 9. All *local and private* acts to continue in force.

3. When a common carrier, by special contract, limits his common law liability, and a loss occurs from a cause from which the contract exonerates the carrier, must the carrier prove that loss occurred without his fault or negligence, or is the burden of proof of negligence on the shipper or plaintiff in the action?   There is some conflict in the adjudged cases, but the weight of authority sustains the position, that the burden of proof is on the shipper.   12 How., 272; 8 Wall, 343; 11 Wall, 133–4; Angell on Carriers, section 61 to 76; Story on Bailments, 573.

Whenever a special contract exists between a common carrier and a shipper, the action must be on the special contract or for breach of duty arising out of such contract.   If the declaration set forth the general liability of the defendants as common carriers, the variance is fatal.   Shaw v. York & N. M. R. R. Co., 13 Ad. & El., 347; Crouch v. London & N. W. R. R. Co., 7 Exchequer, 703; 7 Hill, N. Y., 292; 11 Penn., 533; 22 Ohio, 131; Story on Bailments, sec. 551.

*Sale & Dowd*, for defendant in error:

1. By the act of December 9, 1863, railroad companies at least are prevented from abridging or removing their common law responsibility as to freight and baggage.   Pamph. Acts 1863, page 146.   This act is yet in force, unrepealed.

There is no pretense that it was repealed or annulled down to the date of the adoption of the Code of 1871. As very many pre-existing laws were intended to be reproduced solidly into the Code of 1871, while some were to be modified, and others to be repealed altogether, and it being impracticable to insert clauses expressly adopting, changing or repealing each one to be thus treated, the legislature, for convenience and legal certainty, enacted one general section on the subject (§ 8), and therein wisely adopted and declared one of the established tests of the courts and the law books, by which it is usually ascertained whether or not a former statute has been impliedly superseded or repealed by a later one.

Courts are persistently averse to construing the repeal of prior statutes by mere implication. Generally it is never sanctioned except in two instances. First, where the whole subject matter of the prior law is embraced and revised in the later one, then it is presumed that the legislature intended that the latter should repeal or supersede the former. If the latter is identical with, or equivalent to the former, it supersedes and replaces it; if antagonistic, it simply repeals it. Secondly, when two statutes are irreconcilably repugnant to each other, then the latter prevails, and the former ceases. Sedg. Stat. and Const. Law, 123–128, notes; Pott. Dwarris' Stat. (Ed. 1871), 154–157, notes; Bowen v. Lease, 5 Hill, 221; Williams v. Potter, 2 Barb., 316; Bartlet v. King, 12 Mass., 537; Nicholls v. Squire, 3 Pick., 168; Commonwealth v. Cooley, 10 ib., 37; Commonwealth v. Marshall, 11 ib., 350; Commonwealth v. Herrick, 6 Cush., 465; McCool v. Smith, 1 Black, 470; Norris v. Cooke, 13 How., 429.

The whole subject matter of the act of December 9, has not been revised in the Code. Southern Exp. Co. v. Moore, 39 Miss., 832; Franks v. M. & O. R. R. Co., 41 Miss., 515.

In this case the two statutes are not at all inconsistent with, or repugnant to each other. That of 1863 forbids railroad companies to limit their common law liability as to carriers of goods by any agreement. The Code, section 2429, only

affirms the equally plain common law liability for damages to *persons* through negligence. It is simply cumulative. Bowen v. Lease, 5 Hill, 225–227; Williams v. Potter, 2 Barb., 319, 320; Commonwealth v. Herrick, 6 Cush., 465. It is a cumulative affirmation of the common law, apparently intended to complete the legislative declaration of the liability of railroads as common carriers of goods and persons as at common law.

2. But even if it be granted that the act of 1863, referred to, is repealed, this defendant is still powerless to free itself by contract from the character and liability of a common carrier. By its own organic law, it was specially created and clothed with that character and those responsibilities as at common law. It has no power by its charter, express or implied, to make a contract whereby it may relieve itself of either the character or the liability.

This double question, to-wit: the organic and inherent characteristic of the Mobile and Ohio railroad company as a common carrier, and its authority, *vel non*, under its charter, to make any special contract with shippers, whereby it may be divested of that character, or, retaining it, be relieved from the measure of liability which at the common law is incidental to and inseparable from the position of common carrier, was distinctly and clearly settled by this court, in the case of M. & O. R. R. Co. v. Franks, 41 Miss., 511–514. Whether by virtue of the act of 1863, or by the charter, it is certain this company is a common carrier, and is liable as such as at common law, despite its present attempt to evade that liability by stipulations. By the common law, such carriers are responsible at all events, except for the act of God, the public enemies or the owner himself. And this stringency is because of the temptation and extraordinary opportunities to the carrier to act foully or carelessly, with impunity; the public nature of his employment, the necessities of public interests, and the consequent demands of public policy. Angell on Carriers, §§ 151–153; Riley v. Horne, 5 Bing., 217.

3. Except by express and affirmative legislative permission, controlling the public policy of the State, no common carrier can avoid or diminish his responsibility as such by contract. His responsibility is not created by, nor dependent upon, a contract alone; but it is also imposed by the law in compliance with public policy. He is not strictly like an insurer, either liable or exempt according to the contract of insurance. The true theory is, that the relation of common carrier being once assumed by contract, or impliedly devolved upon him by his holding himself out to the public as such, the measure of responsibility pertaining to that relation is fixed by the policy of the law, for the weighty reasons which have already been adverted to, that is to say, the carrier is held to have absolutely insured against all loss, save by the act of God, the public enemies or the owner himself. The real position of the carrier is that of a *quasi* public officer. The general public through their political embodiment, the State, have an interest in the question, which no private contract between the immediate parties can control. The State has a vital interest which can not be contracted away by third persons. Southern Ex. Co. v. Moon, 39 Miss., 822; M. & O. R. R. Co. v. Franks, 41 ib., 494; Cole v. Goodwin, 19 Wend., 251, Gould v. Hill, 2 Hill 623; Fish v. Chapman, 2 Kelly, 349; Jones v. Voorhies, 10 Ohio, 146; Angell on Carriers, §§ 239, 249; 1 Smith, Lead. Cas., 397, 403; R. R. Co. v. Manufacturing Co., 16 Wall., 318; Illinois Central R. R. v. Frankenberg, 54 Ill., 88.

Article V, pp. 533, 534, contains only nine sections, seven of which relate to the rate of speed through towns, tolling bells, enclosing depots, &c. One provides for selling freight not accepted and paid for, and the last, section (2429), and the only one relating remotely to the subject, simply affirms what has been always the recognised law of every court of the civilized world, in ancient or modern times, as to all carriers, "That every railroad company shall be liable for all damages sustained by any person, in consequence of the

neglect or mis-management of their agents, engineers, &c., or for the mis-management of their engines." There is not the slightest allusion to the subject matter of the act of 1863, to-wit: the right of railroad companies to limit by contract their common law liability as common carriers of freight and baggage. It is against the policy of the law to allow carriers to limit their responsibilities. R. R. Co. v. Manufacturing Co., 16 Wall., 329; Fish v. Chapman, 2 Kelly, 361, 362.

Simrall, J., delivered the opinion of the court:

Samuel Weiner, the plaintiff, delivered on board the cars several bales of cotton to be transported by the Mobile and Ohio Railroad from Tupelo to Mobile. In the course of the transportation the cotton was destroyed by fire. The plaintiff in his declaration placed his right of recovery, on the general duty of the defendant as a carrier of goods, to safely convey and deliver to the consignees.

The special pleas, in various forms of expression, allege an agreement in writing that the railroad company should not be liable for loss caused by fire. Some of them aver, that the fire occurred without the fault, neglect or carelessness of the defendant. Others omit this allegation. A demurrer was sustained to these pleas. The defendant declining to plead over, the cause was submitted to the jury on the general issue.

On the trial, the defendant offered, in evidence to the jury, a written paper, purporting to be signed by the plaintiff, to the effect that the railroad company will assume no risk on cotton   *   *   until able to furnish cars to take it away, and that it shall not be liable for loss from fire, while the cotton is in its possession; also that there was endorsed on the receipt of defendant, for the cotton, "not liable for loss from fire," and that the endorsement was known to plaintiff, and was in writing; also that on several occasions, shortly prior to this shipment, the defendant had signed for plaintiff receipts for cotton to be shipped, of the like import

as the one above referred to; also that the fire was accidental, without the fault, neglect, or carelessness of the defendant, his agents or employes; to the admission of all of which testimony the plaintiff objected, and it was excluded.

The questions of law arise upon the decisions of the circuit court sustaining the demurrer to the pleas, and in rejecting the evidence offered by the defendant.

The common law holds the common carrier liable for damage to and loss of goods committed to him for transportation, unless the damage or loss result from the act of God, which is limited to inevitable accident, or from the public enemy. 2 Red. on Railways, chap. 26, p. 4. His responsibility begins with the reception, and terminates with the delivery of the property at the place of its destination. Subject to the above limitations, his undertaking is absolute and unqualified No palliation or excuse is admitted. He is an insurer of the faithful performance of his duty.

The loss of the cotton by fire does not, it is conceded, come within the common law exceptions from liability.

The defendant attempted, by his pleas and his offers of testimony, on the trial, to make defense on the ground that he engaged to transport the cotton under a special contract, which restricted his general legal liability, and by which the plaintiff took the risk of fire. By a long line of decisions, the doctrine was long ago settled in England, that the carrier could, by special agreement or notice, relieve himself from losses occurring from the excepted risks. The courts had pushed the principle, that a published notice worked the effect of making an implied contract, in accordance with its terms, to such an unreasonable extent, that parliament interferred in 1830, and by the act of 1 William, IV, ch. 68, limited its effects within narrower limits than had been allowed by the courts. Later, the railway and traffic act of 17th and 18th Vict., ch. 31, confined the exemptions of a railroad company's liability to those stipulated for in a written contract, and which should be deemed reasonable by the judge. In England the principle was firmly estab-

lished that the carrier could agree with the shipper as to the
extent of responsibility.    The legislation referred to, was for
the purpose of restraining the power of injuriously limiting
the legal liability.    The doctrine that the carrier may protect
himself by contract, except against damages or losses
arising from his own carelessness or negligence, or that of
his agents and servants, has been adopted in this country by
a number and weight of authority that, however it may be
regretted and disapproved, it is too late now to attempt to
shake or overturn.   Dorr v. Steam Nav. Co., 2 Sand., 136 ;
Merchants, Bank v. N. J. S. Nav. Co., 6 How., 344 ; Penn. R.
R. Co. v. Henderson, 50 Penn. St., 315 ; Farnham v. R. R.
Co., 55 Penn. St. 23 ; Davidson v. Graham, 2 Ohio St., 131 ;
Ill. Cen. R. R. Co. v. Adams, 42 Ill., 474 ; York Co. v. Cen.
R. R. Co., 3 Wallace, 107 ; Bissell v. N. Y. C. R. R. Co., 25
N. Y., 442 ; Nelson v. H. R. R. Co., 48 N. Y., 503 ; Kimball
v. Rutland R. R. Co., 26 Vt., 247 : Angell on Carriers, § 239.
Judge Story, in his work on Bailments, section 549, says,
" that it is now the admitted doctrine in America (as it has
been settled beyond a reasonable doubt in England) that it
is competent for a common carrier to limit his common law
liability " by express contract." In harmony with this cur-
rent of authority, are in this State, Gilmer v. Carman, 1 S. &
M., 303 ; Neil v. Saunders, 2 S. & M., 578 ; Whitesides v.
Thurlkill, 12 S. & M., 600.

The American courts have declared, also, with great
unanimity, that the carrier ought not to be allowed, by
special contract, to exempt himself from loss by his own
negligence, or fraud, or that of his agents and servants.
Story on Bailments, § 549 ; Reno v. Hogan, 12 B. Monroe,
63 ; Swindler v. Hilliard, 2 Rich. Rep., 286 ; Sayer v. P. S. R.
R. Co., 31 Maine, 228 ; Welsh v. Pittsburg Railroad, 12 Ohio
St., 64.

The weight of authority in this country is also in favor of
the rule that the carrier cannot by public notices, although
brought to the notice of the shipper, restrict his liabilities.
Moses v. B. & M. R. R., 4 Foster Rep., 71 ; 26 Vt. Rep.,

(*supra*,) 256; Jones v. Voorhies, 10 Ohio, St. 145; M. C. R. Co. v. Hale, 6 Met., 644; Story on Bail., § 554. This must be done, if at all, by special contract, assented to by the shipper. Atwell v. Adams Express Co., Sup. Ct. of Tenn.; Reported in Cent. Law Journal, (1874,) p. 187. The shipper must understand the import of receipts, or other papers, embodying a contract; such papers, hurriedly handed to him in the rush of business, containing conditions and restrictions under such circumstances, that there was not a fair opportunity to consider and understand them, ought not to impart to such conditions and restrictions the force of stipulations assented to. Southern Express Co. v. Moore, 39 Miss. Rep., 826; Limburger v. Westcott, 49 Barb., 290; Blossom v. Dodd, 43 N. Y., 264. To give any validity to such matter, it must be deliberately assented to, with the knowledge and intent that it shall be binding as a special contract, and control the respective rights of the parties.

The policy of contracting for a less degree of responsibility than the law imposed, has been of late years very gravely doubted.

The first exceptions were in favor of small but extra valuable packages, such as money or jewels. It was but reasonable that the carrier should have notice of their contents, so that he might rate his care, proportionate to the value and the hazard of loss by theft, or other causuality. It was in reference to this sort of property, that the practice first obtained of giving notice that the carrier would not be responsible, unless notified of its character; so that it might be entered and paid for accordingly. This just and reasonable limitation was sanctioned by the courts.

So if the transportation was by water, on the high seas, bays and rivers, the courts recognized as a further limitation, those perils which were incident to navigation, and against which care and prudence could not provide. Such is the origin of the modern doctrine of limiting by contract the general legal liability.

It were easy to trace though the books its gradual enlarge-

ment and extension, until in England the abuse was remedied by parliament.

The business of a common carrier, are *quasi public*. His duties and responsibilities arise out of his employment. The abnegation of any of these obligations, is not referred exclusively to his own discretion and selfish interest, but is determinable also by considerations of the public interest. The law excused him from losses by inevitable accidents, from which human foresight and skill could not escape. There are, however, a class of casualties and accidents, which sometimes overtake the prudent and cautious, such as fire, and robbery; but which do not come within the category of the "inevitable." It is as against losses from the latter accidents or casualties that the carrier may contract. He will not be permitted to abnegate the duty to use care and skill, needful for safe transportation and delivery. He must provide cars, safe and adapted to the preservation and safety of the different sorts of freight committed to him. If one sort of property is liable to injury from exposure to the weather, he should guard against that sort of exposure. If another sort is combustible, he should protect it from the sparks of the locomotive. In this case the risk of fire was assumed by the plaintiff; but that did not absolve the defendant from his duty, to be careful and prudent to guard the cotton against the danger of fire. If the loss can be traced to his negligence, or that of his servants, the liability is the same as if such exemption had not been bargained for.

Whilst the carrier may curtail his risk as insurer, he cannot limit his duty to use diligence, care and good faith in the custody and delivery of the goods. He cannot stipulate for less risk, than that he shall not answer for accidents and casualties which prudence could not provide against. Any greater liability than that is not supported by reason, morality, or good policy.

Although the terms "ordinary" and gross negligence are frequently used in the books, it is very difficult to make the

distinction palpable to the apprehension. In Hinton v. Dibbin, 2 Ad. & El., N. S., 645, it was said by Lord Denman, that "it might well be doubted whether any intelligible distinction exists." Such distinction was repudiated in R. R. Co. v. Lockwood, 17 Wallace, 382, as not well founded.

Care, diligence and prudence must, in the nature of things, be measured by the character of the employment and business about which they are bestowed. The lack of them is negligence. The mechanic and artisan, each in his sphere, engages to bring trained and educated skill to the service of his employer.

A railroad company receives its franchises and the patronage of the State, because of the benefits and conveniences it bestows in the ready and safe transportation of property and passengers. It assumes the obligation to put into operation the cars, appliances, and motive power usual and suitable to transact its business, nor can it, by contract, relieve itself from that obligation, nor discharge itself from that measure of skill and prudence usual and necessary to the safe and orderly conduct of its business. It must put upon its road safe cars and machinery, and if loss occurs from defective or unsuitable ones, he must answer for it. Sayer v. R. R. Co., 31 Maine, 238; Lyon v. Meets, 5 East, 428.

The company must furnish vehicles, safe and adapted to the nature of the property, whether live stock or inanimate matter. In Smith v. R. R. Co., 12 Allen, 532; Davidson v. Graham, 2 Ohio St., 131; Davis & Co. v. Graham & Co., 4 Ohio St., 362, and Welsh v. R. R. Co., 10 Ohio St., 74, it was held that the carrier was bound to provide vehicles suitable for the transportation of cattle. The cars must be absolutely safe. In Davis & Co. v. Graham & Co., 4 Ohio St., the judgment turned on the degree of negligence that would excuse, and it was declared " if the loss was occasioned by negligence, whether *slight* or gross, it was not within what was, or could by contract have been made an exception to the liability of the carrier." In the last case above cited this principle was reaffirmed. A large number of cattle were brought to a

depot for shipment. The owner signed a contract contain-.
ing this stipulation: "Having examined the cars, he took
*all the risks* of transportation." It was in proof that the day
before the shipper examined the cars, and found the doors to,
be defective, but the freight agent said he would have them
repaired by the next day. The plaintiff secured the doors
as best he could and loaded the cars. Because of this
defect, part of the cattle were lost. *Held:* That the plaintiff
signed the contract under stress of circumstances. *Held,*,
secondly: That the carrier was negligent. We entirely ap-
prove of the principle and its application.

A railroad company should not be excused from the duty
to furnish suitable cars, adapted to the freight offered, by
exacting from the shipper a stipulation to assume the risks;
of transportation.

The owners of property have a right to assume that the,
carrier will provide suitable and safe vehicles, and when he;
has hauled his products to a depot for shipment, it might
well be held that he is compelled by "stress of circum-
stances" if he signs a contract taking upon himself risks
which properly belong to the occupation of a public carrier.

In this State a very large, if not the largest, freight busi-
ness of the railroads is the transportation of cotton to mar-
ket. It is a duty incident to the public employment in
which they are engaged to load the cotton in cars suitable;
to its protection from fire, and to use all other usual precau-
tions. If they fail to do this, and it is burned, it is negli-
gence. If a valuable horse were shipped on a flat car, and
should be injured by the inclemency of the weather (as was:
the case in one of the authorities quoted) or should fall off
and be killed or injured, it would be negligence, because,
the vehicle was not suitable for that sort of freight.

The plaintiff insists that his rights are governed, not by:
the common law, but by the statute of 1863.

Is that statute still in force? Is the act of 9th December,
1863, still in force as part of the statute law of the State?
The act entitled an act to provide for a new code of the;

laws, etc., of June 9, 1870, pamphlet acts, p. 624, defines in the first section, the duties of the commissioners, viz: "To revise, digest and codify the laws of this State" and "to propose alterations and amendments thereof."

The first section of the revision of 1871 provides that "the revised code of the statute laws · * * shall consist of the several chapters reported by the commissioners as amended and changed by the legislature." The eighth section declares "this revised Code * * shall be received in use as the statutory laws * * of a general nature, and shall supersede and repeal all pre-existing statutes of a general nature, the subjects of which are herein revised and consolidated."

The end intended to be accomplished by a code of written statutes, is to make a full and complete expression of the legislative will on the several subjects treated of.

A code is defined by lexicographers to be a general collection or compilation of laws by public authority. In its more restricted sense, as intended by the act of 1870, it means a collection and compilation of the general statutes. Manifestly the intent was, that the body of the statute law, upon all general subjects should be embraced in the revision. The general rule is, that when any statute is revised, or when one statute is framed from another, some parts being omitted, the parts omitted, are to be considered as annulled. For it must be presumed that the legislature has declared its entire will, otherwise there must be imputed to them gross carelessness or ignorance. Sedgwick on Statutes, 429. In Massachusetts very material portions of the statute of 1754 concerning donations and bequests to pious and charitable uses, were held not to be in force, because the legislature in 1785 had legislated upon the same subject, and had omitted to re-enact these provisions. Ellis v. Page; 1 Pick, 43; Bartlet v. King, 12 Mass., 537; Nichols v. Squire, 5 Pick., 168. In Bartlett v. King, (*supra.*) the court say: "That a subsequent statute revising the whole subject matter of a former one, and evidently intended as a sub-

stitute for it, although it contains no express words to that effect, must on the principles of law, as well as in reason and common sense, operate to repeal the former." See Leighton v. Walker, 9 N. H., 59; Wakefield v. Phipps, 37 N. H., 305; Walworth & Co. v. Whitewater, 17 Wis., 196.

The 8th section of·the Code, above cited, was introduced, out of abundant caution to free the subject of all doubt or perplexity, so that it would be easy to determine what were the statute laws of a general nature in force. "If the subjects are revised and consolidated," then all the parts of former statutes, on the same subject, which are omitted, ceased to operate on the first day of October, 1871.

The subject of railroads, is considered in the 5th art. of the 55th chapter of the code of 1871, and regulations are prescribed, included in 8 sections. These rules have reference to the rate of speed through towns and cities; signals by the bell of the locomotive at road crossings; inclosures around depots, the enforced payment of freights earned, where the consignee, or owner, can not be found or refuses to receive the goods, and to make proper grades for roads crossing the railroad, and finally, declaring the liability of the railroad company for all damages which may be sustained by any person in consequence of the neglect or mis-management of their agents, &c., &c."

The legislature had in its mind all these subjects, including a summary remedy for freights earned, and injuries by negligence. The fair and reasonable presumption is that, it made all the positive regulations which it deemed expedient to make, and was content, that in all other respects the common law should provide the rules.

We think, therefore, that the omission to bring forward the act of 1863, and incorporate it in the code, was tantamount to the declaration, that it was repealed.

The case being unaffected by this statute, must be disposed of by the "unwritten law."

Among the principles educed from the authorities, and

which aid the attainment of a proper result on another trial are these :

That whilst the railroad company may contract for a limitation of, or exemption from liability, for losses, arising from those accidents and casualties, which prudence, skill and care, can not always prevent and guard against; nevertheless this does not absolve or relieve the company from that degree and measure of prudence, care and skill, in the management of its business which the law imposes.

If, therefore, a loss or injury happen to goods, from a casualty, from which the company is exempted by contract, it is still a question of fact, for the jury, whether the carrier was not negligent, whether by the use of reasonable skill and prudence, the loss might not have been guarded against and prevented.

Since the case will be remanded to the circuit court for another trial, we have thought it necessary to state fully the principles that may be applicable to it.

The judgment of the circuit court will be reversed and judgment here over-ruling the demurer to the pleas. The special contract, and the testimony offered by defendant, that the fire was accidental, without the fault of the defendant, was competent evidence, and ought to have been admitted.

A new trial is awarded.