SWIFT & Co. *v.* SONES *et al.**

(Division B.    April 19, 1926.)

[107 So. 881.    No. 25651.]

1. AGRICULTURE.  STATUTES.  *Former law is repealed by later enactment, which covers its entire scheme, although provisions are somewhat different; statute not repugnant to former one, but clearly intended to prescribe only rule in case provided for, repeals former statute; statute comprising complete scheme to control sale of fertilizer held to repeal prior statutes regulating same subject (Laws 1912, chapter, 138; Code 1906, sections 2244-2263).*
   Where the legislature covers the entire scheme embraced in the former law, the former will be repealed by the latter, although there is some difference in the provisions of the two statutes.  A statute not repugnant in its provisions to a former one, but clearly intended to prescribe the only rule in the case provided for, repeals the former statute.  Consequently chapter 138, Laws of 1912, being a complete scheme for the control of the sale of fertilizers in the state, repeals chapter 51, Code of 1906, regulating the same subject.

2. AGRICULTURE.  *Statutes.  Ordinarily two acts approved same day will not be held to be repealed one by the other, but, if they are upon same subject and in conflict, court will look to actual passage of acts to determine latest legislative intention; if provisions of two acts approved the same day can be reconciled, court will do so by reading into provisions of one using general language, provisions of other specifically controlling subject; statutes relating to analysis of samples of fertilizers held not in conflict (Laws 1912, chapters 138, 220).*

Ordinarily two acts approved on the same day will not be held to be one repealed by the other, but, if they are upon the same subject and in conflict, the court will look to the actual passage of the acts through the legislature to determine the latest legislative intention, although each is approved by the Governor on the same day, but, if the provisions can be reconciled by the court, the court will do so by reading into the provisions of the one, using general language, the provisions of the other specifically controlling the subject.

3. STATUTES. *Where two acts are passed on same day, but go into effect on different days, one taking effect last will become law from that day, where they are in necessary conflict.*

Where two acts are passed on the same day, but go into effect on different days the one taking effect last will become the law from that day, where they are in necessary conflict.

4. EVIDENCE. *Statute requiring state chemist to analyze samples of fertilizers held not to authorize introduction of certificate of chemist in evidence, where samples are not drawn and forwarded as required by statute; where samples of fertilizers are not drawn and forwarded as required by statute, certificate of state chemist is not admissible in evidence, but it is necessary to take depositions of state chemist and others (Laws 1912, chapter 138, section 15 [Hemingway's Code, section 4610] Laws 1912, chapter 138, section 16).*

Section 15, chapter 138, Laws of 1912 (Hemingway's Code, section 4610), providing that the state chemist shall analyze samples of fertilizers sent to him by farmers, provided that such samples shall be drawn in the presence of two disinterested witnesses, who will certify that such samples were taken in accordance with the printed directions of the state chemist, and such samples so drawn shall be delivered to the witnesses who will themselves forward them to the state chemist for analysis, does not authorize the introduction of the certificate of the chemist in evidence under section 16, chapter 138, Laws of 1912, where the samples are not so drawn and forwarded. In such cases it will be necessary to take depositions or the testimony of the state chemist and others.

---

*Corpus Juris-Cyc. References: Agriculture, 2 C. J., p. 1000, n. 72 New. Evidence, 22 C. J., p. 810, n. 98. Statutes, 36 Cyc., p. 1071, n. 25; p. 1076, n. 39; p. 1078, n. 43; p. 1086, n. 85, 86; p. 1151, n. 53.

APPEAL from circuit court of Lamar county.

HON. J. Q. LANGSTON, Judge.

Action by F. B. and L. B. Sones against Swift & Co. for damages for deficiency of fertilizer sold. Judgment for plaintiffs, and defendant appeals. Reversed and remanded, with directions.

*Stevens & Heidelberg,* for appellant.

I. The court erred in permitting the introduction in evidence in this case of the certificate from the state chemist. This certificate was incompetent for the reason that the proof failed to show that the samples drawn and sent to the state chemist, on which this analysis was based, were drawn according to law. In fact, the proof showed the contrary. See sec. 15, ch. 138, Laws of 1912. (1) Admittedly, the samples were not drawn in accordance with the provisions of this act, since they were not drawn in the presence of two disinterested witnesses. (2) After the samples were drawn, they were taken by one of the plaintiffs alone sixteen miles to Purvis. (3) The samples were sent by one of the plaintiffs to the state chemist when no witness, interested or otherwise, was present. (4) The act itself requires the witnesses to forward the samples to the state chemist, and this was not done.

II. There is no existing law in Mississippi authorizing the recovery of quadruple damages where fertilizer is sold and lacks a material element represented to be therein. The only statute which ever authorized the recovery of quadruple damages was section 2256, Code of 1906, which is embraced in and forms a part of chapter 51, Code of 1906, dealing with the subject of fertilizers, and we submit that this entire chapter has been superceded and repealed by chapter 138, Laws of 1912.

Chapter 138, Laws of 1912, is a complete scheme covering the entire field of regulation in the traffic of fertilizer, and the penalties for violations thereof, and covers

the same general ground as was covered by chapter 51, Code of 1906.

"Where a statute is evidently intended to revise the whole subject treated in a former statute and to be a substitute therefor, it repeals such former statute, and though there may be a plain *casus omissus,* the court cannot supply it. Sedg. St. & Const. Law 365, 366 and note; *M. & O. R. R. Co.* v. *Weiner,* 49 Miss. 725." *Clay County* v. *Chickasaw County,* 1 So. 753.

"A statute existing may be repealed without being specifically and directly referred to where the legislature enacts a new statute covering the field covered by the former act, although there is some difference in the provisions of the two statutes." *State* v. *Wyoming Mfg. Co.,* 138 Miss. 249, 103 So. 11.

Chapter 138, Laws of 1912, does not specifically amend or repeal any section of chapter 51, Code of 1906, but provides in general terms that all laws and parts of laws in conflict therewith are repealed to take effect on April 1, 1912. Under the doctrine laid down in the decisions heretofore cited, the effect of this complete revision of the fertilizer laws of this state was to repeal chapter 51, Code of 1906, thereby repealing that section of this latter section, 2256, authorizing the recovery of quadruple the price received or agreed to be paid.

. However, even if we should be wrong in our conception of the effect of chapter 138, Laws of 1912, if it is not such a complete revision of the entire subject-matter dealt with in chapter 51, Code of 1906, as to repeal the entire chapter, still it is bound to be true that all provisions of chapter 51, Code of 1906, in conflict with the provisions of chapter 138, Laws of 1912, are repealed by implication. Then sections 2256 and 2257, Code of 1906, are repealed by chapter 138, Laws of 1912.

The fact that the sections of the Code of 1906 under discussion are embraced in Hemingway's Code, gives them no life if they are repealed because the act of the legislature adopting Hemingway's Code provides as follows: "It is further provided that any law which may

have been repealed and which may have been included in said code and supplement, or which may have been subsequently repealed, shall not be revised by this act.''

*Rawls & Hathorn,* for appellees.

If appellant is right in the contention that chapter 138, Laws of 1912, has the effect of repealing chapter 51, Code of 1906, then we have entirely misconceived our measure of damages, and the case must be reversed If appellant is in error in the contention that chapter 138, Laws of 1912, repeals chapter 51, Code of 1906, then we submit that the case should be affirmed.

We submit that unless appellant can show the court that every reasonable provision and protection given by chapter 51, Code of 1906, has been taken care of by chapter 138, Laws of 1912, then his entire theory fails, his carefully constructed analysis disintegrates, and the error of his contention is made manifest.

Let us see, first, what provisions and protections are in chapter 51, which are not in chapter 138. Section 2244, Code of 1906 (section 4586, Hemingway's Code) defines the term *"fertilizer"* as used in the Code chapter. We challenge appellant to show us in the act of 1912, a definition of the term. Section 2245, Code of 1906, (section 4587, Hemingway's Code) provides that the professor of chemistry at A. & M. shall analyze all fertilizer and his certificate of analysis shall be posted and kept posted in a conspicuous place at every place where fertilizer is sold. The act of 1912 has no such provision. Section 2246, Code of 1906 (section 4588, Hemingway's Code) provides that the certificate of the manufacturer shall be posted also where fertilizers are sold, this certificate giving the component parts, etc., and guaranteeing that it does not contain leather, etc. Section 2247 is left out of Hemingway's Code and is clearly taken care of and superceded by section 1, chapter 138, Laws of 1912. Section 2248, Code of 1906, (section 4589, Hemingway's Code) which was amended by chapter 220, Laws of 1912,

approved on March 16, 1912, the very day that chapter 138, Laws of 1912, was approved, providing that: "The state chemist shall also analyze all fair samples of fertilizers properly certified and prepared which may be furnished to him by the farmers and other purchasers for use, free of charge, and shall give a certificate thereof." (This is the exact wording of section 2248 as it appears in Code of 1906, and the amendment by chapter 220, Laws of 1912 follows): "But the state chemist shall in no case demand information as to the name of the manufacturer or brand of any fertilizer submitted to him for analysis by farmers or other purchasers."

It would have been a very foolish thing, it seems to us, for the legislature to amend this section 2248, Code or 1906, if it had intended that chapter 138, adopted on the same day, should supercede and repeal this section, just fifteen days later—as chapter 138 went into effect on April 1, 1912. We insist that this one circumstance ought to satisfy any reasonable mind that the legislature never intended chapter 138, Laws of 1912, to supersede and repeal chapter 51, Code of 1906. It must be perfectly clear that chapter 138, Laws of 1912, repealed only such parts of chapter 51, Code of 1906, as were in conflict with it, and no more.

The repeal of statutes by implication is not only not favored, but is never resorted to unless it is manifestly clear to the court that effect cannot be given to both statutes under review. In fact, the only instances where such appeal is ever resorted to by the court is where the acts are so in conflict or so inconsistent as that both cannot be reasonably enforced. See the following authorities on repeal of statutes by implication: *Donnell* v. *State Rev. Agt,* 109 Miss. 570, 68 So. 780; *Gilmore, etc., Groc. Co.* v. *Wells Co.,* 103 Miss. 468, 60 So. 480; *Ascher & Baxter* v. *Moyse & Co.,* 101 Miss. 35, 57 So. 299; 25 R. C. L., p. 912, par. 165.

We want to call the court's attention again to the fact, as already shown, that on the very day that the legislaure adopted chapter 138, Laws of 1912 (March 16), that

it likewise adopted chapter 220, Laws of 1912, which amended section 2248, chapter 51, Code of 1906, being one of the sections which appellant contends was repealed by chapter 138, Laws of 1912. Laying aside for the moment the question of charging the legislature with the doing of a vain and foolish thing in adopting on the same day two laws, one by necessary implication repealing the other, let us apply the accepted rule of statutory construction as applied by our courts in a case of this kind. See 1 Lewis' Sutherland on Statutory Construction, sec. 268; *State* v. *Rotwill,* 41 Pac. 1007.

Appellant contends that section 2256, Code of 1906, under which we sue, was repealed and superseded by section 19, chapter 138, Laws of 1912. Under all the authorities they are wrong unless section 2256 is clearly in conflict with section 19, chapter 138, Laws of 1912. And not only are these two sections not in conflict with each other, but they are in harmony with the purpose and intention of the two statutes, and we submit that with section 2256 repealed and nothing to take its place, except section 19, chapter 138, Laws of 1912, the farmers or other purchasers are without adequate remedy against an unscrupulous or dishonest manufacturer. See *Adams* v. *American Agricultural Chemical Co.,* 82 So. 850. We do not believe that the legislature ever intended that the users of commercial fertilizers should be placed so at the mercy of the manufacturers.

We are of the opinion that section 2256, Code of 1906, and section 19, chapter 138, Laws of 1912, are intended by the legislature for entirely different purposes. Instead of giving section 19 the meaning given it by appellant, that is, that it repeals and takes the place of section 2256, Code of 1906, it seems to us that the more reasonable meaning to give it is that it supersedes and repeals section 2257, Code of 1906.

We submit, therefore, that no part of chapter 51, Code of 1906, has been repealed, except such as in conflict with chapter 138, Laws of 1912, and section 2256, not being in conflict with the act of 1912, is not repealed and

is still the law and is appellees' proper and legal measure of damage. From the same process of reasoning, and by the same application of the same principles of statutory construction we submit that section 2248, Code of 1906, as amended by chapter 220, Laws of 1912, and section 2249, have not been repealed, but both sections are still the law; and, therefore, the court did not err in admitting the certificate of analysis of the state chemist in evidence in the case.

Argued orally by *R. W. Heidelberg,* for appellant, and *C. V. Hathorn,* for appellees.

ETHRIDGE, J., delivered the opinion of the court.

Appellees were plaintiffs below, and sued appellant under the provisions of section 2256, Code of 1906, for damages under said section resulting from the purchase of thirty-three sacks of one hundred pounds each of the brand of fertilizer known as "12–4–4, high grade fertilizer, Red Steer brand," alleging that the said fertilizer as branded and analyzed on the sacks contained certain valuable elements, and charged that said fertilizer was deficient in certain of the valuable elements, and alleged that the price agreed to be paid for the fertilizer was seventy-seven dollars and fifty-five cents, being at the rate of forty seven dollars a ton. There was a judgment in the court below for four times seventy-seven dollars and fifty-five cents, amounting to three hundred ten dollars and twenty cents.

Plaintiffs testified that they purchased said fertilizer through one L. C. McDaniel, an agent of Swift & Co., and also purchased through said person said acid phosphate. They testified over objection that the "12–4–4, high grade fertilizer, Red Steer brand" did not look like a high grade fertilizer, but had the appearance of being acid; that they took samples from five sacks of the fertilizer, in the presence of F. B. Sones, Ben Sones, and Hilliard Gibson, who also purchased fertilizers of the

same kind from the same concern; that these samples were taken at his home about sixteen miles from Purvis, Miss., and that he brought them to Purvis and had the county agent at Purvis wrap the samples into packages and address same to the state chemist, and that the witness carried the packages so addressed to the post-office and mailed them. The witness further testified that he took some of the "12–4–4, Red Steer" fertilizer, and, mixed, it half and half with phosphate and put it on a patch of corn, and that he also took some of the same fertilizer and mixed it with acid phosphate in the proportion of one-third to two-thirds, and put some of that mixture on another patch of corn, and saw no difference in the yield of the two patches of corn. On cross-examination, the witness stated that he was to get all of the thirty-three sacks from one car or shipment, but that he got half of the fertilizer mentioned in one shipment which was of "12–4–4, high grade" fertilizer, but in the second shipment he got fertilizer branded "12–3–$29^{1}/_{100}$–4"; that he got sixteen bags of the "12–4–4" and seventeen bags of the "12–3–$29^{1}/_{100}$–4." He stated that the sample taken from the "12–4–4" was taken before he received the "12–3–$29^{1}/_{100}$–4," and that no samples of the "12–3–$29^{1}/_{100}$–4" were ever sent to the state chemist for analysis. The witness further stated that none of the purchase price had ever been paid.

One of the sacks was introduced in evidence, containing the brand and manufacturer's analysis required by statute. This sack had printed on it the following:

"100 lbs. net. Swift's Red Steer. 12–4–4. High grade. Manufactured by Swift & Company, Harvey, La. Guaranteed Analysis. Water Sol. Phos. Acid 9.00%; Citrate Sol Phos. Acid 3.00%; Avail. Phos. Acid 12.00%; Nitrogen 4.00%; from Cyanide Sulp. Ammo. Tankage Potash Sol. in Water 4.00%."

The plaintiffs introduced a statement of the analysis from the state chemist, which is as follows:

Form 17062 9-'22-4M.
        Mississippi State Chemist Laboratory.
            Agricultural College, Mississippi    7/9/25.
    Analysis No. 74963.
    Analysis of acid phosphate.
    Received on 3/18/25, from D. C. Morris, Co. Agt.,
    Address:  Purvis, Miss.

Results:

Moisture ................................. 10.50
Water soluble phosphoric acid ............... 13.80
Citrate soluble phosphoric acid ............... 4.00
Available phosphoric acid ................. 17.80
Insoluble phosphoric acid ...................... .18
Total phosphoric acid ................. 17.98
Nitrogen ................................. .66
Potash ................................. .26

    [Seal]    [Signed]  W. F. Hand, State Chemist.
    Kindly give the number when referring to this analysis.

The appellant contends that the judgment was erroneous because section 2256, Code of 1906, and the whole Code chapter on "fertilizers," being chapter 51, Code of 1906, has been superseded by chapter 138 of the Laws of 1912, and that under the provisions of chapter 138, Laws of 1912, only one-half of the agreed price can be recovered. Appellant further contends that it was error to introduce the certificate of the state chemist in evidence, because the samples of fertilizer sent to the chemist were not taken in conformity with section 15, chapter 138, Laws of 1912. Appellant further contends that the judgment was erroneous because the samples taken and analyzed were taken from only the brand of fertilizer "12-4-4, high grade," of which there were only sixteen sacks received, while the suit was for thirty-three sacks, and that there was no analysis shown of the other fertilizers. Appellant also assigned for error the admission of the testimony of the parties in regard to the experiments in mixing the fertilizers and the production obtained thereby and the testimony as to the appearance

of the fertilizer being the same as that of the acid phosphate.

Chapter 138, Laws of 1912, is entitled:

"An act to provide for and regulate the sale, inspection and analysis of commercial fertilizers, cotton seed meal, and fertilizing materials in the state of Mississippi and to amend section 1317 of the Code of 1906, and to repeal all laws and parts of laws in conflict therewith."

This act (chapter 138, Laws of 1912) was approved March 16, 1912, and by its terms took effect on April 1, 1912.

By chapter 220, Laws of 1912, section 2248, Code of 1906, was amended (see section 4589, Hemingway's Code), and reads as follows:

"2248. (2069). *Chemists to Analyze Samples Sent by Farmers or Other Purchasers.*—The state chemist shall also analyze all fair samples of fertilizers properly certified and prepared which may be furnished to him by farmers and other purchasers for use, free of charge, and shall give a certificate thereof; but the state chemist shall in no case demand information as to the name of the manufacturer or brand of any fertilizer submitted to him for analysis by farmers or other purchasers."

This act (chapter 220, Laws of 1912) was approved March 16, 1912.

By a comparison of chapter 51, Code of 1906, with chapter 138, Laws of 1912, it will be seen that each chapter contains many sections in common; that is to say, that each has sections applying specifically to the same subject-matter, though somewhat different in their wording. There are a few sections in the two chapters that are not common to the other. It will not be necessary to set out in detail the agreements and differences of the two statutes, as that would occupy much space, but a general statement of the provisions of chapter 138, Laws of 1912, will show that chapter 138, as its title indicates, is a scheme to provide for the regulation, sale, inspection, and analysis of commercial fertilizers, cotton seed meal, and fertilizer materials in the state of Mississippi.

Section 1 of chapter 138 requires that all manufacturers, jobbers, manipulators, or sellers of commercial fertilizers, and fertilizing material, who may desire to sell, or offer to sell, or exchange in the state of Mississippi, such fertilizer or fertilizering material, shall first file each year or season with the state chemist and also with the commissioner of agriculture and commerce, on forms to be supplied by them, the name of each brand of fertilizer or fertilizing material, or the name of the fertilizing material when no brand named is used to designate it, which they may desire to sell, either by themselves, their jobbers or agents, in the state. The guaranteed analysis thereof stating in minimum percentages only the amount of water soluble phosphoric acid, citrate soluble phosphoric acid, available phosphoric acid, nitrogen, and potash which such fertilizer or fertilizing material is guaranteed to contain.

Section 2, chapter 138, Laws of 1912, requires the commissioner of agriculture to collect for the analysis and to pay such fees into the state treasury. Section 3 thereof requires each package of fertilizer or fertilizer material to be properly branded, and sets forth the form of the analysis required under the act and requires that each package must correspond with the analysis of the state chemist. Section 4 of the act designates and requires what fertilizers shall be branded as "high grade," and what fertilizers shall be branded "standard grade," and fixes the percentum of fertilizer elements that must be contained in such fertilizers. Section 5 of the act prescribes the contents of cotton seed meal and the grades or brands for such meal. Section 6 prohibits grades inferior to that required in section 5 to be sold as cotton seed meal. Section 7 prescribes what complete fertilizer must contain. Section 8 requires manufacturers and dealers in fertilizer to apply for tags to the commissioner of agriculture, and prohibits the sale or exchange of fertilizer or fertilizing material without having such tags attached to each package thereof, and provides that such tags shall be *prima-facie* evidence

that such seller has complied with the requirements of this act.

Section 9 of the act requires that the commissioner of agriculture shall deposit monthly in the state treasury all funds received from the sale of tax tags, and that a record of all such sales and receipts shall be kept in his office. Section 10 requires the guaranteed analysis of each brand of fertilizer or fertilizing material to be uniform throughout the season. Section 11 prohibits dealers from using the same trade marks. Section 12 requires that adulterated products be so branded. Section 13 of the act provides:

"Nothing in this act shall be construed to restrict or avoid sales of acid phosphate, cotton seed meal, or other fertilizer or fertilizing material to each other by importers, manufacturers or manipulators who mix fertilizer materials for sale, or as preventing or restricting shipments of materials to manufacturers or manipulators who have filed or registered their guarantees as required by the provisions of this act."

Section 14 of the act requires the commissioner of agriculture to appoint inspectors, and that the inspectors shall draw samples, and that such samples shall be analyzed by the state chemist, and provides the penalty for the violation of this section. Section 15 of the act provides:

"It shall be the duty of the state chemist to analyze free of charge all samples of cotton seed meal and fertilizers sent to him by farmers, provided that such samples be drawn in the presence of two disinterested witnesses who will certify that such samples were taken in accordance with printed directions of the state chemist. But the identity of the brand of fertilizer or the name of the manufacturer may not be revealed and in such cases shall be no bar to having test made. The samples so drawn shall be delivered to the witnesses who will themselves forward it to the state chemist for analysis."

Section 16 of the act provides that the official analysis made under the direction of the state chemist, and bear-

ing his seal, shall be admissible in evidence in any of the courts of this state on the trial of any issue involving the merits of any fertilizer, cotton seed meal, or fertilizing material. Section 17 of the act provides that the commissioner of agriculture shall make rules and regulations for the fertilizer traffic which shall be published in bulletin form. Section 18 of the act provides for procedure by the commissioner of agriculture and the state chemist when the provisions of the act have been violated by manufacturers, guarantors, or dealers in such fertilizers, and makes it the duty of the county or district attorney to institute proceedings. Section 19 of the act makes the sale of deficient fertilizers a misdemeanor, and provides for a penalty, and, in substance, provides that, if any sample of fertilizer, fertilizing material, or cotton seed meal, drawn in accordance with the provisions of this act, shall, upon analysis, prove deficient in any of its constituents as guaranteed, and if by reason of such deficiency the relative commercial value thereof, computed by means of the schedule of prices fixed by the state chemist, shall fall four per cent. below the commercial value computed from the guaranteed analysis, the manufacturer, dealer, or guarantor, or person responsible for the sale of such fertilizer shall be guilty of violation of this act, and, upon conviction thereof, shall be fined not less than fifty dollars and not more than one hundred dollars for each offense, and any contract, agreement, or note made by any farmer or other purchaser for the payment of such deficient fertilizer or fertilizing material or cotton seed meal shall be collectable for only one-half of the amount agreed upon and, if payment has been made already, the guilty person, firm, or seller shall return to the purchaser injured one-half of the amount paid. In addition to the penalty provided in this section, such deficient fertilizer shall be subject to seizure, condemnation, and sale as the court may direct, the proceeds from such sale to be covered into the state treasury. Section 20 of the act provides a penalty for offering fertilizers for sale without proper

142 Miss.—43.

tags. Section 21 makes the professor of chemistry of the Agricultural and Mechanical College the state chemist, and that all analyses of fertilizers, fertilizing materials, and cotton seed meal shall be made under his direction. Section 22 of the act amends section 1317, Code of 1906, with reference to penalty for failure to note adulterations on packages.

It will be seen from this outline of the provisions of chapter 138, Laws of 1912, that it is a full and complete scheme regulating the subject, and that it covers the field.

While the doctrine of implied repeals of statutes is not favored by the courts, and, where two statutes may exist together in harmony, ordinarily they would not be treated as one repealing the other, although their language is not identical and no reference is made in the one to the other. Still it is well settled in this state that, where the legislature enacts a complete scheme dealing with the subject-matter, a former scheme dealing with the same subject-matter will be treated as having been repealed. This subject-matter has recently been dealt with by this court in *State ex rel. Knox* v. *Wyoming Manufacturing Co.*, 103 So. 11, 138 Miss. 249. In the third syllabus to the opinion in this case we held:

"Where the legislature in a later act covers the entire scheme dealt with in the former act, the former act will be repealed by the later act, although there is some difference in the provisions of the two statutes. A subsequent statute, not repugnant in its provisions to the former one, but clearly intended to prescribe the only rule in the case provided for, repeals the former statute"'—citing *M. & O. R. Co.* v. *Weiner*, 49 Miss. 739, and *Myers* v. *Marshall County*, 55 Miss. 347.

It could not be assumed that the legislature intended by an act which was to operate throughout the state that another act on the same subject operating on the same persons and in the same territory, under the same conditions, could both be the law. Justice requires that every person shall be able to know what law shall govern his rights, and it is not desirable nor permissible to give

one of the parties the option of selecting one of two laws, either of which might apply to his rights. It is doubtful if two statutes on the same subject-matter, existing in the same territory, and applicable to the same persons, could stand under the due process of law clause of the Constitution.

We are therefore of the opinion that chapter 138, Laws of 1912, is a full and complete scheme, and it repeals chapter 51, Code of 1906, on the same subject.

It is said that chapter 220, Laws of 1912, approved on the same day by the Governor, prevents this view from being operative, because it brings forward section 2248, Code of 1906, which is one of the sections of the Code chapter on "Fertilizers" in a somewhat amended form. This chapter 220, Laws of 1912, does not in terms require samples to be taken by two disinterested persons and sent by them to the state chemist. It is therefore said that under this section the state chemist's certificate was admissible, although the provisions of section 15, chapter 138, Laws of 1912, was not complied with.

Ordinarily two acts approved on the same day will not be held to be repealed one by the other, but, if they are in hopeless and radical conflict, we think it would be permissible to look to the journals of the legislature to see which act actually was passed last by the legislature, because the legislature is the body that originates and determines the policy of the statute. Looking to the journals it will be found that chapter 138, Laws of 1912, in fact passed the legislature last, although both acts were signed by the Governor on the same day. Furthermore, chapter 138, Laws of 1912, took effect on the 1st day of April, 1912, and, if there is a conflict, of course it prevails from that date. However, we think the two sections can be harmonized by reading them together, and, when so reading, they require the samples taken for analysis to be properly certified and prepared, which would mean prepared and signed in accordance with the specific provisions of section 15, chapter 138, Laws of 1912.

It follows from what we have said that the provisions of section 19, chapter 138, Laws of 1912, control the rights of the plaintiffs, and that under the allegations of the declaration there would be less demandable than would confer jurisdiction on the circuit court.

The judgment of the court will therefore be reversed, with directions to dismiss the complaint.

*Reversed and remanded.*