[No. 3363.   Oct. 1, 1929.]

STATE v. MARCUS.

[281 Pac. 454.]

David Marcus, of Albuquerque, for appellant.

R. C. Dow, Atty. Gen., and F. H. Patton, Asst. Atty. Gen., for the State.

## OPINION OF THE COURT

WATSON, J. Upon an agreed statement of facts, appellant was convicted of having operated in Santa Fe county as an "itinerant vendor" without payment of license. He was an employee of a permanent business house in Bernalillo county, and in that capacity had leased a hotel room and was exhibiting to the public samples of ladies' apparel, and taking orders for delivery from the house in Albuquerque. It seems to be agreed that the prosecution was under Code 1915, c. 61, art. 1.

Appellant's first contention is that, as the business which he represented was permanently established in Albuquerque, he was not engaged in a temporary or transient business, within the meaning of section 3005 of that article. He cites Smith v. Farr, 46 Colo. 364, 104 P. 401, and Eaton v. People, 46 Colo. 361, 104 P. 407. See, also, Leonard v. Read, 46 Colo. 307, 104 P. 410, 133 Am. St. Rep. 77; Wilcox v. People, 46 Colo. 382, 104 P. 408. These decisions, construing a Colorado itinerant vendor's act, reach the conclusion urged by appellant. The state points out, however, that, in addition to article 1, supra, we have article 2 of the same chapter, and that it was a statute similar to that, and containing substantially the same definition of "itinerant vendors" that the Colorado decisions construed.

This directs attention to a curious situation in our statute law. The territorial Legislative Assembly of 1905 seems to have been peculiarly alive to frauds perpetrated or threatened by the operations of itinerant vendors. Each

branch of the assembly produced its own remedy; that of the House being chapter 107, and that of the Council being chapter 128. Both were approved on the same date. The former was entitled "An act to protect the inhabitants of this territory from frauds perpetrated by itinerant vendors." The latter was entitled "An act to prevent and punish fraud in sales of manufactured goods, jewelry, wares and merchandise by "itinerant vendors and to regulate such sales." The former, by section 1 (Code 1915, § 3005), thus defines itinerant vendors:

"The words 'itinerant vendors' as used in this chapter shall include all persons engaged in a temporary or transient business and who for the purpose of carrying on such business hire, lease or occupy any room, building or structure for the storage, exhibition or sale, or as a place from which to deliver the goods, wares and merchandise, or any part thereof dealt in by them; also all persons who go from place to place or house to house, soliciting or taking orders for goods, wares and merchandise for future delivery; but shall not include commercial travelers or selling agents selling goods to dealers and shall not include or apply to the sale of books, papers, school supplies, fuel or household machinery."

The latter, by sections 1 and 2 (Code 1915, §§ 3011, 3012), thus defines the term:

"That the term 'itinerant vendor,' for the purpose of this article shall mean and include any person, either principal or agent, who engages in either a temporary or transient business in this State, either in one locality or in traveling about the country, or from place to place, selling manufactured goods, jewelry, wares or merchandise, and it shall include peddlers and hawkers, and also those who for the purpose of carrying on their temporary or transient business, hire, lease or occupy a building, structure, tent, car, vehicle, store room or place of any kind, for the exhibition and sale of any manufactured goods, jewelry, wares or merchandise.

"The provisions of this article shall not apply to commercial travelers or agents selling to merchants in the usual course of business, and it shall not apply to the sale of goods, wares, jewelry or merchandise in original packages from other states as permitted by the laws of the United States applicable to interstate commerce between the states: And provided, further, that the provisions of this article shall not apply to the sale of books, papers, school supplies or household machinery."

The evil apparently aimed at is the same. The substantial similarity of definition is apparent. Both provide for licenses and penalties for engaging in business with-

out them. Article 1 provides for a county license, for which the payment of $100 is exacted, and for a deposit with the county treasurer of $1,000 in cash. Article 2 requires a state license, for which $25 is exacted, and for a county license in every county where business is done, graduated from $100 to $350, according to the mode of doing business.

The Colorado Supreme Court seems to interpret "who engages in either a temporary or transient business in this state" as meaning "who engage in a business which, as to this state, is temporary or transient." So it holds that a solicitor for a permanent business within the state is not affected by the act. The Attorney General considers these decisions of no consequence here, because the expression "in this state," apparently deemed significant, is not found in article 1. He urges that, under that statute, the location of the principal business, whether within or without the state, is immaterial.

The weakness of this position is that it disregards the fact that the two statutes are in pari materia. We cannot as the Colorado Supreme Court could, consider article 2 independently; nor can we, as the Attorney General would, consider article 1 independently. Considering them as parts of a single act, where do we arrive?

If the territorial assembly considered the words "in this state" in article 2 as significant as the Colorado Supreme Court considered them, then their omission in article 1 must be equally significant. In that case we would have article 2 limited to soliciting for foreign houses and article 1 limited to domestic houses. Peculiar results would follow. Appellant, representing an Albuquerque house, would be required to pay a license fee of $100 and deposit $1,000 as cash security against fraud, to remain for 18 months, in order to ply his business in Santa Fe. Had he represented a Kansas City house, he would have been required to pay a state license of $25 and a county license of $250, but no deposit would have been exacted. In respect to license fees, there would be discrimination against the Kansas City house. In respect to deposit for security against fraud, there would be discrimination

against the Albuquerque merchant. Should we follow Colorado in holding article 2 unconstitutional, as discriminatory against interstate commerce, the burdens of regulation would fall upon resident merchants, and nonresident merchants would be freed from them.

The words "in this state" are frequently used in statutes, unnecessarily, and without force or meaning. However we might be influenced or persuaded by the Colorado decisions, if article 2 stood alone, we cannot suppose that a legislative body, intending so important a distinction, in considering almost simultaneously two statutes upon the same subject-matter, would rest it upon an implication so unnecessary and so easily to be overlooked. So we are unable to harmonize the two statutes by assigning them these different fields of operation.

We fully recognize the principle which requires us to harmonize and give concurrent effect to these two statutes if possible. Yet we are inclined to the view that each is so complete in itself and so inconsistent, with respect to this matter of soliciting orders for an established business house, that both cannot stand. Appellant has no doubt violated both statutes, and has become amenable to different penalties. In order to carry on his business, must he submit to both forms of regulation? Either would seem adequate to accomplish the declared purpose. We think that, in the regulation of the particular activity here in question, one statute must give way to the other.

When it is impossible entirely to harmonize two statutes which are in pari materia, that taking the later effect is controlling. 36 Cyc. 1151. The rule applies to two statutes approved, as were these, on the same date. Harrington v. Harrington's Est., 53 Vt. 649; Swift & Co. v. Sones, 142 Miss. 660, 107 So. 881; Naylor v. Bd. of Educ., 216 Ky. 766, 288 S. W. 690. Article 1 took effect at its passage. Laws 1905, c. 107, § 7. Article 2 took effect 60 days after its passage. Laws 1905, c. 128, § 24. It seems, therefore, that, as regards the matter here involved, article 1 has been repealed, and the prosecution fails.

While this is not the exact point made by appellant, a consideration of his contention with the counter contention of the state leads to that result. We think him entitled to the benefit of it.

The judgment will be reversed, and the cause remanded, with a direction to discharge appellant. It is so ordered.

BICKLEY, C. J., and PARKER, J., concur.

CATRON and SIMMS, JJ., did not participate.